**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

| | |
|---|---|
| In re | : |
| | :  Chapter 11 |
| FKF 3, LLC, | : |
| | :  Bk Case No. 10-37170 (CGM) |
| Debtor. | : |

-------------------------------------------------------x

| | |
|---|---|
| GREGORY MESSER, as Trustee of the | : |
| FKF Trust, | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : |
| | :  Case No. 13-cv-03601 (JCM) |
| JOHN F. MAGEE, _et al._[1], | : |
| | : |
| Defendants. | : |

-------------------------------------------------------x


**JOINT PRETRIAL MEMORANDUM OF DEFENDANTS**
**JOHN F. MAGEE, BRADLEY INDUSTRIAL PARK, INC., COMMERCIAL**
**CONSTRUCTION, INC., FKF HOLDING COMPANY, LP, S.F. PROPERTIES, LLC,**
**FKF EDGEWATER, LLC, AVENTINE EDGEWATER, LLC, FKF RETAIL, LLC,**
**AVENTINE RETAIL, LLC, JERRY'S SELF STORAGE, LLC, MELISSA A. MAGEE,**
**PATRICE L. MAGEE, JONATHAN MAGEE, LIZBETH MAGEE KEEFE, <u>LAWRENCE</u>**
**<u>J. KEEFE, JR., AND VALERIE MAGEE</u>**

John F. Magee ("Magee"), Bradley Industrial Park, Inc., Commercial Construction, Inc.,

FKF Holding Company, LP, S.F. Properties, LLC, FKF Edgewater, LLC, Aventine Edgewater,

LLC, FKF Retail, LLC, Aventine Retail, LLC and Jerry's Self-Storage, LLC (sometimes hereafter

the "Magee Related Entities"), and Melissa A. Magee, Patrice L. Magee, Jonathan Magee, Lizbeth

---

[1] The defendants include John F. Magee, Mitchell L. Klein, Burton R. Dorfman, Melissa A. Magee, Patrice L. Magee, Jonathan Magee, Lizbeth Magee Keefe, Lawrence J. Keefe, Jr., Valerie Magee, FKF Holding Company, LP, FKF V Holding Co., S.F. Properties, LLC, Commercial Construction, Inc., Bradley Industrial Park, Inc., FKF Edgewater, LLC, Aventine Edgewater LLC, FKF Retail LLC, Aventine Retail, LLC, Jerry's Self Storage, LLC, Rose Glasses, LLC, TA Group, LLC, JDJ Holding Co., LLC, Fasman, Klein & Feldstein, LLP, and Dorfman, Knoebel & Conway, LLP (collectively, the "<u>Defendants</u>").

1

Magee Keefe, Lawrence J. Keefe, Jr., and Valerie Magee (sometimes hereafter the "Magee Children") now submit their joint pretrial memorandum and respectfully show as follows:

## I.   <u>BACKGROUND FACTS</u>

1.      Plaintiff Gregory Messer brings this action in his capacity as the Trustee of the FKF Trust, a liquidating trust authorized by the confirmed chapter 11 plan of FKF 3, LLC ("FKF3"), a New York limited liability company formed in 2004. Mr. Messer, who elsewhere acts as a chapter 7 panel trustee in cases before the United States Bankruptcy Court, under the supervision of the Office of the United States Trustee, serves here at the discretion of the FKF Trust board. In his representative capacity as Trustee of the FKF Trust, Mr. Messer stands in the shoes of  FKF3.

2.      The FKF Trust board is comprised of 5 members, each of whom is or was a creditor of FKF3.  Three of the 5 trust board members were formerly partners with, or otherwise in business with, Mitchell Klein ("Klein") and/or Burton Dorfman ("Dorfman"). Klein, an accountant, and Dorfman, formerly a lawyer, are members of FKF 3.

3.      John Magee ("Magee"), a developer and builder, is the third member of FKF3.

4.      Magee, Klein, Dorfman and others are or were also involved, albeit in differing capacities, with two affiliated companies having similar names: FKF Holding Company, L.P. ("FKF Holding"), a Delaware limited partnership formed in 1996; and FKF II Holding Co., LLC ("FKF2"), a New York limited liability company formed in 2003.

5.      Magee and his brother Patrick capitalized FKF Holding with over $7.5 million from the proceeds of a judgment on their counterclaim against the Town of Orangetown, New York, in an action in Rockland County Supreme Court. Dorfman and his then-law partner Dennis Lynch had substituted-in as counsel for the Magee's in that action after their attorney felt compelled to withdraw in the face of political pressure. When the appeals were over and the judgment was paid,

Dorfman and Lynch became minority limited partners in FKF Holding and contributed a portion of their continent fee as capital. Klein, who had done Magee's taxes for several years, assisted in the *Orangetown v. Magee* action by performing a damages analysis. Klein was not made a limited partner in FKF Holding, but was instead appointed manager. Klein received compensation for his accounting fees for FKF Holding and controlled all of its books and records, and banking transactions. FKF Holding conducted business by making (often junior and sometimes unsecured) construction loans to real estate development and construction projects in the greater New York area, including projects where the partners owned an interest. The partners agreed that FKF Holding's loans would not exceed $5 million on any project, and that funds would be pooled, i.e., loans to borrowers and the proceeds of those loan would not be earmarked.

6.      Magee's relationship with Klein goes back to the mid-1980's, when Klein took over the accounting work for Magee and two of his companies after Magee's longtime personal and business accountant became seriously ill. As he had with FKF Holding, Klein served as the accountant for FKF2 and then FKF3, and became an equity partner both in FKF2 and then in FKF3. On his own initiative and without prior disclosure to the partners, Klein solicited some of his accounting clients to loan money to FKF Holding. Klein continued and then expanded those solicitations with FKF2 and with FKF3. The great majority (by number) of third-party lenders to FKF2 and FKF3 were Klein's accounting clients.

7.      FKF3 failed during the depths of the Great Recession. Its larger lenders, some individually and others acting in a small group, pressed Klein and Dorfman, and then Magee, to protect their loans to FKF3, and (along with Magee) demanded that Klein provide more information about FKF3's finances, without success. Klein and Dorfman received the most significant pressure from one wealthy investor family with whom they had each been (minor)

investment partners, and had represented professionally: Elias (or "Eli") and Howard Josephs, their family members and affiliated trusts and investment companies (the "Josephs"). Klein, with Dorfman's consent, executed retroactive assignments of certain loans to the Josephs in response to that pressure.[2] The Josephs, who also commenced two actions against FKF3, Magee, Klein and Dorfman in Rockland County Supreme Court, sit (in the person of Elias Josephs) on the FKF trust board. Another group of lenders convinced Klein and Dorfman to execute an amendment to the FKF3 Operating Agreement appointing accounting firm Day Seckler LLP as the manager of FKF3, and thereafter filed an involuntary petition against FKF3 in the United States Bankruptcy Court for the Southern District of New York. The Bankruptcy Court entered an order for relief on Day Seckler's consent on August 9, 2010.

8.     Plaintiff brings a number of preference and constructive fraudulent conveyance claims against the defendants, predicated on a finding of insolvency, both under federal bankruptcy law and under Article 10 of the New York Debtor and Creditor Law. Plaintiff also brings an actual fraudulent conveyance claim not dependent on a finding of insolvency; along with claims for turnover of bankruptcy estate property; to re-characterize some defendants' claims to a share of the trust res as equity; for equitable subordination; for contribution; for legal and accounting malpractice; for breach of fiduciary duty; for aiding and abetting breach of fiduciary duty; a veil-piercing claim (alter ego); a claim for spoliation; for objections to certain claims against FKF3 for money loaned; and for attorneys' fees.

9.     Mr. Klein's computer equipment and accounting records were confiscated by agents of the Federal Bureau of Investigation in the early days of the FKF3 bankruptcy. Thereafter, Mr. Klein declined to testify both in this proceeding, and in an action brought by the Josephs in

---

[2] The FKF trust board has not sought to avoid those assignments.

Rockland Supreme Court, asserting his privilege against compulsory self-incrimination under the 5th Amendment. Klein permitted a default judgment to be taken against him in this proceeding in the approximate amount of $38 million.

10.     Mr. Dorfman pled guilty under 18 U.S.C. §1001 to lying to a Department of Labor investigator about his law firm's investment of pension funds in FKF3, was convicted, and is serving a six-month sentence.   In the reported decision accepting Mr. Dorfman's petition to surrender his law license, the Second Department recites that: "[h]e acknowledged that as a result of an ongoing investigation against him by the Grievance Committee for the Ninth Judicial District, the Grievance Committee would recommend the prosecution of a disciplinary proceeding against him based upon charges of professional misconduct, involving a conflict of interest, fraud, and breach of fiduciary duties. The respondent acknowledges that he could not successfully defend himself on the merits against such charges." *Matter of Dorfman*, 147 A.D.3d 26, 42 N.Y.S.3d 847 (2d Dept. 2016). The sentence imposed includes a restitution component.

11.     Magee believes and has asserted that Klein and Dorfman conspired to secretly strip funds from FKF Holding, and to transfer those funds without authority or justification to FKF2, and to FKF3. Magee further believes and asserts that Messrs. Klein and Dorfman, and their families, have illicitly profited from that wrongful diversion of funds. Klein, owing to his sole control of the books, records and banking information and transactions for these businesses as well as others, was able to avoid detection and exposure until roughly the summer of 2009.

12.     Klein kept the accounting records for FKF Holding, FKF2 and FKF3 on an Intuit software application called QuickBooks. The trustee's claims against Magee, the Corporate Defendants and the Magee Children rely entirely on those QuickBooks records. *See* Exhibits A through P-1 to the Complaint in this action. The entries on those exhibits are taken from Klein's

QuickBooks. The trustee's financial experts did not attempt a thorough-going reconciliation of Klein's QuickBooks to FKF3's bank statements and cancelled checks before this action was commenced.

13.     Unable to get answers about FKF3 or the other companies' finances and transactions from Klein, Magee attempted to reconcile a large volume of transactions that are recorded by Klein on FKF3's QuickBooks, against the actual FKF3 bank statements and cancelled checks, which became available after FKF3's failure. A significant number of those recorded QuickBooks financial transactions, involving tens of millions of dollars, simply cannot be reconciled to the bank records. The QuickBooks records either reflect a large number of transactions involving innocent multi-million dollar accounting errors, or they have been intentionally falsified.

14.     The trustee commenced this action, first asserting eighteen (18) causes of action, and later adding two (2) more by amendment for a total of twenty (20). The claims fall into a few distinct groupings: claims seeking to avoid certain transfers from FKF3 (either due to alleged fraud, or alleged insolvency coupled with a lack of fair consideration); objections to claims for payment from the bankruptcy estate; malpractice (as to Klein and Dorfman), fiduciary duty claims (breach, and aiding & abetting); alter ego, contribution and spoliation.

## II.   <u>TYPOLOGY OF ALL CLAIMS BY PLAINTIFF IN THIS ACTION</u>

15.     The Trustee has asserted in all twenty categories of claims in this case. They include:

Turnover, 11 U.S.C. §542(a) and (b)

Equitable subordination, 11 U.S.C. §510(b)

Recharacterization of debt to equity, federal common law

Disallowance of claim by recipient of avoidable transfer, 11 U.S.C. §502(d)

Avoidance – preference, 11 U.S.C. §547

Avoidance – actual fraudulent conveyance, 11 U.S.C. §548(a)(1)(A)

Avoidance – constructive fraudulent conveyance, 11 U.S.C. §548(a)(1)(B)

Avoidance – constructive fraudulent conveyance, 11 U.S.C. §544(b) and New York Debtor

and Creditor Law ("NY DCL") §273

Avoidance – constructive fraudulent conveyance, 11 U.S.C. §544(b) and NY DCL §274

Avoidance – constructive fraudulent conveyance, 11 U.S.C. §544(b) and NY DCL §275

Avoidance – actual fraudulent conveyance, 11 U.S.C. §544(b) and NY DCL §276

Attorneys' fees, 11 U.S.C. §544(b) and NY DCL §276-a

Recovery on avoidance actions under 11 U.S.C. §544, 547, and/or 548, against immediate or

subsequent transferee(s), 11 U.S.C. §550 [included in all avoidance claims]

Legal Malpractice, New York common law

Accounting Malpractice, New York common law

Breach of fiduciary duty, New York common law

Aiding and abetting breach of fiduciary duty, New York common law

Alter ego, New York common law

Conversion, New York common law

Spoliation, New York common law

Contribution, New York CPLR §§1401 and 1402

### III.   PLAINTIFF'S CLAIMS ASSERTED AGAINST MAGEE

16.    The following are those claims asserted by the Trustee against Magee:

Turnover, 11 U.S.C. §542(a) and (b)

Equitable subordination, 11 U.S.C. §510

Recharacterization of debt to equity, federal common law

Disallowance of claim by recipient of avoidable transfer, 11 U.S.C. §502(d)

Avoidance – actual fraudulent conveyance, 11 U.S.C. §548(a)(1)(A)

Avoidance – constructive fraudulent conveyance, 11 U.S.C. §548(a)(1)(B)(ii)(I)

Avoidance – constructive fraudulent conveyance, 11 U.S.C. §548(a)(1)(B)(ii)(II)

Avoidance – constructive fraudulent conveyance, 11 U.S.C. §548(a)(1)(B)(ii)(III)

Avoidance – constructive fraudulent conveyance, 11 U.S.C. §544(b) and New York Debtor and

Creditor Law ("NY DCL") §273

Avoidance – constructive fraudulent conveyance, 11 U.S.C. §544(b) and NY DCL §274

Avoidance – constructive fraudulent conveyance, 11 U.S.C. §544(b) and NY DCL §275

Avoidance – actual fraudulent conveyance, 11 U.S.C. §544(b) and NY DCL §276

Attorneys' fees, NY DCL 11 U.S.C. §544(b) and §276-a

Recovery on avoidance actions under 11 U.S.C. §544, 547, and/or 548, against immediate or

subsequent transferee(s), 11 U.S.C. §550

Breach of fiduciary duty, New York common law

Aiding and abetting breach of fiduciary duty, New York common law

Alter ego, New York common law

Conversion, New York common law

Spoliation, New York common law

Contribution, New York CPLR §§1401 and 1402

## IV.   PLAINTIFF'S CLAIMS ASSERTED AGAINST THE MAGEE CHILDREN

17.     The Trustee's claims against the Magee Children [3] are in part direct claims seeking to avoid and recover loan repayments, and in part derivative of claims against Magee for portions of Magee's FKF3 distributions that he asked be sent directly to them:

Disallowance of claim by recipient of avoidable transfer, 11 U.S.C. §502(d)

Equitable subordination, 11 U.S.C. §510(b) (Patrice Magee, Melissa Magee, Jonathan Magee)

Avoidance - preference, 11 U.S.C. §§547(b) (Melissa Magee)

Avoidance - actual fraudulent conveyance, 11 U.S.C. §548(a)(1)(A) Avoidance - constructive fraudulent conveyance, 11 U.S.C. §548(a)(1)(B)

Avoidance - constructive fraudulent conveyance, 11 U.S.C. §544(b) and New York Debtor and Creditor Law ("NY DCL") §273

Avoidance - constructive fraudulent conveyance, 11 U.S.C. §544(b) and NY DCL §274

Avoidance - constructive fraudulent conveyance, 11 U.S.C. §544(b) and NY DCL §275

Avoidance - actual fraudulent conveyance, 11 U.S.C. §544(b) and NY DCL §276

Recovery on avoidance actions under 11 U.S.C. §544, 547, and/or 548, against immediate or subsequent transferee(s), 11 U.S.C. §550

Attorneys' fees, NY DCL 11 U.S.C. §544(b) and §276-a

---

[3] Valerie Magee is John Magee's niece.

## V.   PLAINTIFF'S CLAIMS ASSERTED AGAINST THE CORPORATE DEFENDANTS

18.   The Trustee's claims against the Corporate Defendants are mainly straightforward fraudulent conveyance actions.

Equitable subordination, 11 U.S.C. §510(b) (Bradley(?) and Commercial Construction)

Recharacterization, federal common law (Commercial Construction)

Turnover, 11 U.S.C. §542(b) (Jerry's)

Avoidance - actual fraudulent conveyance, 11 U.S.C. §548(a)(1)(A)

Avoidance - constructive fraudulent conveyance, 11 U.S.C. §548(a)(1)(B)

Avoidance - constructive fraudulent conveyance, 11 U.S.C. §544(b) and New York Debtor and Creditor Law ("NY DCL") §273

Avoidance - constructive fraudulent conveyance, 11 U.S.C. §544(b) and NY DCL §274

Avoidance - constructive fraudulent conveyance, 11 U.S.C. §544(b) and NY DCL §275

Avoidance - actual fraudulent conveyance, 11 U.S.C. §544(b) and NY DCL §276

Attorneys' fees, 11 U.S.C. §544(b) and NY DCL §276-a

Recovery on avoidance actions under 11 U.S.C. §544, 547, and/or 548, against immediate or subsequent transferee(s), 11 U.S.C. §550

## VI.   DEFENSES AND EVIDENTIARY MATTERS APPLICABLE TO MAGEE, THE MAGEE CHILDREN AND THE CORPORATE DEFENDANTS

19.   *In Pari Delicto*. The Trustee's common law claims against Magee are barred by the *in pari delicto* doctrine, based on the principle that a wrongdoer should not profit from his own misconduct. As a corporation or limited liability company can only act though its agents, the misconduct of those agents in the scope of their employment is imputed to their principal.

The Trustee, standing in the shoes of the company, is deemed *in pari delicto* with the agent and is thereby barred from recovering for a wrong in which he is deemed to have participated.

> Traditional agency principles play an important role in an in pari delicto analysis. Of particular importance is a fundamental principle that has informed the law of agency and corporations for centuries; namely, the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals (*citations omitted*). Corporations are not natural persons. "[O]f necessity, [they] must act solely through the instrumentality of their officers or other duly authorized agents" (*citations omitted*). A corporation must, therefore, be responsible for the acts of its authorized agents even if particular acts were unauthorized  . . .

> Agency law presumes imputation even where the agent acts less than admirably, exhibits poor business judgment, or commits fraud (*see e.g. Price v Keyes*, 62 NY 378, 384-385 [1875] [critical issue is whether agent was acting in furtherance of his duties, regardless of his "selfish motive"]). As we explained long ago, a corporation "is represented by its officers and agents, and their fraud in the course of the corporate dealings is in law the fraud of the corporation"  . . . Like a natural person, a corporation must bear the consequences when it commits fraud (*see e.g. Wight v BankAmerica Corp.*, 219 F3d 79, 86-87 [2d Cir 2000] [under "fundamental principle(s) of agency," managers' misconduct within the scope of their employment is imputed and "bars a trustee from suing to recover for a wrong that he himself essentially took part in"]).

*Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465, 912 N.Y.S.2d 512, 517-18, 938 N.E.2d 941, 950-51 (N.Y. 2010).

20.     The presumption that the acts and knowledge of an agent are imputed to her principal is rebuttable. If the plaintiff proves that the agent had an interest that was directly adverse to her principal, the agent's acts are not imputed. However, this adverse interest exception requires that the Trustee prove that FKF3's manager acted *entirely* for his own benefit, and that his acts did not benefit FKF3 even slightly.

> [T]he "adverse interest" exception . . . directs a court not to impute to
> a corporation the bad acts of its agent when the fraud was committed
> for personal benefit. *See The Mediators, Inc. v. Manney (In re
> Mediators, Inc.)*, 105 F.3d 822, 827 (2d Cir. 1997). However, "this
> most narrow of exceptions" is reserved for cases of "outright theft or
> looting or embezzlement . . . where the fraud is committed *against* a
> corporation rather than on its behalf." *Kirschner v. KPMG LLP*, 15
> N.Y.3d 446, 938 N.E.2d 941, 952, 912 N.Y.S.2d 512 (N.Y. 2010).

*Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Investment Securities LLC)*,

721 F.3d 54, 64-65 (2d Cir. 2013).

> Under *Kirschner*, the adverse interest exception applies only when
> the agent is acting "*entirely* for his own or another's purpose."
> *Kirschner*, 15 N.Y.3d at 465 (emphasis in original) (citing *Center*,
> 66 N.Y.2d at 784-85). Thus, "if a corporation receives *any* benefit
> from the [misconduct], the adverse interest exception will not
> apply, even if the [misconduct] ultimately causes the corporation to
> suffer harm in the long term, and even where the insider intended
> to benefit himself at the corporation's expense." *Cobalt Multifamily
> Investors I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 428 (S.D.N.Y.
> 2012) (emphasis in original) (citing *Kirschner*, 15 N.Y.3d at 468-
> 69)). *Kirshner* itself noted that conduct that helps the company to
> "attract investors and customers and raise funds for corporate
> purposes" would not fall within the exception, because it benefits
> the company. *Kirschner*, 15 N.Y.3d at 468-69. This principle holds
> true even where, as here, the conduct drives the company into
> bankruptcy. *Id.* at 468. (Emphasis added.)

*Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 548 (E.D.N.Y. 2015).

21.     Where the claims asserted by the Trustee in this action against Magee arise

pursuant to New York law for breach of fiduciary duty, aiding and abetting breach of fiduciary

duty, conversion or contribution, and where the manager of FKF3 is proven by Magee or the

Trustee to be liable for such wrongs, then the *in pari delicto* doctrine applies (absent proof by the

Trustee establishing 'adverse interest') and the Trustee is precluded from going to the jury

against Magee on those claim(s).

22.    **Limitations on Claims for Distributions from LLC**. As the Trustee of the FKF3 Trust, plaintiff stands in the shoes of FKF3, a limited liability company organized under the provisions of the New York Limited Liability Company Law ("NY LLCL"). NY LLCL §508(c) establishes a three (3) year limitations period for claims against the members of a New York limited liability company[4] for wrongful distributions, whether received knowingly or unknowingly. Section 508(c) displaces the six (6) year limitations provision of NY CPLR §213(8), which is applicable only to claims or actions not otherwise subject to a specific limitations statute, i.e., the trustee's avoidance claims pursuant to NY DCL Article 10, §§273-276-a.

> (c) Unless otherwise agreed, a member who receives a wrongful distribution from a limited liability company shall have no liability under this article or other applicable law for the amount of the distribution after the expiration of three years from the date of the distribution.

23.    The bar applies broadly to any form of alleged wrongful distribution, including those based on fraudulent conveyance, as the result of a breach of fiduciary duty or aiding and abetting a breach of fiduciary duty, for unauthorized profits or capital distributions, etc.

> Wrongful is a broad term and the common understanding of the term would include distributions that could be recovered as either constructive or intentional fraudulent conveyances under the DCL, or as distributions based on an alleged breach of an LLC operating agreement.

> If there were doubt as to the scope of the word "wrongful" as used in § 508(c) of the LLCL, the intent of the New York Legislature to impose a blanket three-year limitations period on a member's State

---

[4] There is disagreement among the New York appellate courts whether the three-year bar of NY LLCL §508(c) extends to claims by third-party creditors against LLC members. *Compare, e.g.*, *Matter of Setters v. AI Props. & Devs. (USA) Corp.*, 139 A.D.3d 492, 32 N.Y.S.3d 87 (1st Dept. 2016) (third-party claims not barred by LLCL §508(c)) with *Chiu v. Man Choi Chiu*, 71 A.D.3d 621 623; 896 N.Y.S.2d 132, 134; 2010 N.Y. App. Div. LEXIS 1725 *3 (2d Dept. 2010) (third-party claims barred by LLCL §508(c)). Here, the claims are brought in the name and stead of the LLC, making the distinction a non-issue.

law liability for the receipt of a distribution, and to override longer State limitations periods, is made clear by the remainder of § 508.

. . .

[I]t was the intent of the New York Legislature that claims under the DCL and contractual claims for the recovery of distributions be preserved, but only as limited by § 508(c). See also, 16 John Blyth, et al., *NY Jur. Business Relationships* § 2129 ("Subject to the time limitations on a member's liability for a wrongful distribution, the Limited Liability Company Law provisions regulating the obligations of a member for receipt of wrongful distributions does not affect any obligation or liability of a member under the operating agreement or other applicable law for the amount of the distribution."); 1 Karon S. Walker, *N. Y. Practice Series-Limited Liab. Co. & Partnerships: A Guide to Law and Practice* § 7:11 ("A member who knowingly receives a wrongful distribution is not liable to the LLC or to creditors after three years from the date of distribution.").

*O'Connel v. Shallo (In re Die Fliedermaus LLC)*, 323 B.R. 101, 2005 Bankr. LEXIS 498 (Bankr. S.D.N.Y. 2005) (dismissing as time-barred fraudulent conveyance claims for transfers beyond three years under 11 U.S.C. §544(b) and NY DCL §§270-279); *cited with approval in Williamson v. Culbro Corp. Pension Fund*, 41 A.D. 229, 838 N.Y.S.2d 524, 2007 N.Y. App. Div. LEXIS 7551 (1ST Dept. 2007) (dismissing claims by liquidating trustee for wrongful distributions under "nearly identical statute" in New York Limited Partnership Law); *Bd. of Managers of the Chocolate Factory Condo. v. Chocolate Partners, LLC*, 43 Misc. 3d 1223(A), 1223A, 992 N.Y.S.2d 157 (Sup. Ct. Kings Co. 2014) (fraudulent conveyance claims under NY DCL §§273-278); *Chiu v. Man Choi Chiu*, 71 A.D.3d 621 623; 896 N.Y.S.2d 132, 134 (2d Dept. 2010) (claims for [transfers arising from] breach of fiduciary duty beyond three years barred by NY LLCL §508(c)).

24.     **Breach of Fiduciary Duty**.   Membership in a limited liability company does not itself give rise to fiduciary obligations.[5] Limited liability company managers, by contrast, are fiduciaries both to their company and to its members.

25.     NY LLCL §409 provides in pertinent part as follows:

> (a)  A manager shall perform his or her duties as a manager, including his or her duties as a member of any class of managers, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.
>                . . .
>
> (c)  A person who so performs his or her duties in accordance with this section shall have no liability by reason of being or having been a manager of the limited liability company.

*See, e.g.*, *Pokoik v. Pokoik*, 115 A.D.3d 428, 982 N.Y.S.2d 67 (1st Dept. 2014); *Salm v. Feldstein*, 20 A.D.3d 469, 470, 799 N.Y.S.2d 104, 105 (2d Dept. 2005); *Geltzer v. Lefkowitz (In re Kollel Mateh Efraim, LLC)*, 2011 Bankr. LEXIS 1566 (Bankr. S.D.N.Y. No. 04-16410, decided April 28, 2011).

26.     "Although management of the defendant company is vested in its members by its articles of organization, such vesting of authority is '*subject to any provisions in . . . the operating agreement . . . granting* or withholding the management powers or responsibilities of

---

[5]

Noticeably absent from the Limited Liability Company Law, which expressly imposes a duty of good faith upon managers of an LLC, is any concomitant duty on a non-managing member (*see* Karon S. Walker, New York Limited Liability Companies and Partnerships § 1:8 [West's NY Prac Series] ["(a) member who is not a manager does not owe a duty to the LLC or its members, except to the extent he or it participates in the management of the LLC"]; 51 Am Jur 2d, Limited Liability Companies § 11 ["members of a limited liability company are like shareholders in a corporation in that they do not owe a fiduciary duty to each other or to the company, and that as long as members of a limited liability company are not acting in a managerial capacity, they do not have fiduciary duties to one another unless such fiduciary duties are set forth in the operating agreement"]).

*Kalikow v. Shalik*, 43 Misc. 3d 817, 825, 986 N.Y.S.2d 762, 768 (Sup Ct Nassau County 2014).

one or more members.' Limited Liability Company Law §401(a)." [6] *Nathanson v. Nathanson*, 20 A.D.3d 403, 799 N.Y.S.2d 83, 84 (2d Dept. 2005). Similarly, whereas KF3's articles of organization vest management in the members, the FKF3 operating agreement vests management of FKF3 in just one member: Mitchell Klein.

27.     Mr. Klein exercised managerial responsibility and authority for FKF3, and had sole possession and control of the books and records and the company, including all of its checkbooks, bank statements and cancelled checks. Mr. Klein managed FKF3 as he had earlier managed FKF2, and as he had managed FKF Holding before that. Pursuant to NY LLCL §409, Klein had a fiduciary duty to FKF3 and to its members.

28.     **Aiding and Abetting Breach of Fiduciary Duty**.  Under New York law, there are three elements to a claim for aiding and abetting breach of fiduciary duty. To recover on this claim against Magee,[7] the Trustee must prove (i) that Magee had had actual knowledge of a breach of fiduciary duty owed by Klein and/or Dorfman to FKF3; (ii) that Magee knowingly

---

[6] NY LLCL § 401, Management of the limited liability company by members, provides:

> (a)  Unless the articles of organization provides for management of the limited liability company by a manager or managers or a class or classes of managers, management of the limited liability company shall be vested in its members who shall manage the limited liability company in accordance with this chapter, subject to any provisions in the articles of organization or the operating agreement and section four hundred eighteen of this article granting or withholding the management powers or responsibilities of one or more members or classes of members.

> (b)  If management of a limited liability company is vested in its members, then (i) any such member exercising such management powers or responsibilities shall be deemed to be a manager for purposes of applying the provisions of this chapter, unless the context otherwise requires, and (ii) any such member shall have and be subject to all of the duties and liabilities of a manager provided in this chapter.

[7] Assuming without admitting that *in pari delicto* doesn't prevent the Trustee from going to the jury on this claim.

induced or actively participate in that breach with Klein and/or Dorfman, and (iii) the breach of

fiduciary duty which Magee induced, or in which Magee actively participated, must have caused

damages to FKF3.

> The first element is "a breach by a fiduciary of obligations to
> another," *of* which the aider and abettor had "actual knowledge."
> *Kaufman v. Cohen*, 307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169
> (1st Dep't 2003) ("Although a plaintiff is not required to allege that
> the aider and abettor had an intent to harm, there must be an
> allegation that such defendant had actual knowledge of the breach
> of duty."); see also *Wechsler v. Bowman*, 34 N.E.2d 322, 326, 285
> N.Y. 284, 291 (1941) ("Any one who knowingly participates with
> a fiduciary in a breach of trust is liable for the full amount of the
> damage caused thereby to the cestuis que trust."). The second
> element is "that the defendant knowingly induced or participated in
> the breach"; and the third element is "that plaintiff suffered damage
> as a result of the breach." *Kaufman*, 307 A.D.2d at 125; see also
> *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000)
> (reciting elements of New York aiding and abetting a breach of
> fiduciary duty law); *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843,
> 847-48 (2d Cir. 1987) (same); *Whitney v. Citibank, N.A.*, 782 F.2d
> 1106, 1115 (2d Cir. 1986) (same).

*Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 49-50 (2d

Cir. 2005).

29.     Inducement is the act or process of enticing or persuading another person to take a

certain course of action. As for knowing participation, a person knowingly participates in a

breach of fiduciary duty only when he or she provides substantial assistance to the party engaged

in fiduciary misconduct. Substantial assistance occurs only when a defendant affirmatively

assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur.

Mere inaction constitutes substantial assistance only when the defendant himself owes a

fiduciary duty directly to the plaintiff. A failure to act cannot form the basis for an aiding and

abetting claim against a defendant, absent proof by the plaintiff that establishes a direct fiduciary

duty owed by that defendant to FKF3. *Sharp Int'l Corp. v. State St. Bank & Tr. Co.*, *supra*, 403 F.3d at 49-51.

30.     A failure to act cannot make out an aiding and abetting claim against Magee, absent proof establishing an otherwise direct fiduciary duty owed by Magee to FKF3.

> "A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." Kaufman, 307 A.D.2d at 126. Substantial assistance may only be found where the alleged aider and abettor "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." See id. **"The mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff."** Id.; see also Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 284 (2d Cir. 1992). (Emphasis added.)

*Sharp Int'l Corp. v. State St. Bank & Tr. Co., supra,* 403 F.3d at 50-51.

31.     **Alter Ego**.  The New York rule for disregarding the corporate form requires that, at the time of the subject transaction, a third party (frequently a parent corporation) must: "(1) have exercised such control that the [entity controlled] 'has become a mere instrumentality' of the [party exercising control], which is the real actor; (2) such control has been used to commit fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *Wm. Passalacqua Builders, Inc. v. Resnick Developers S.*, 933 F.2d 131, 138 (2d Cir. 1991).  The requirements in New York for piercing the corporate veil and for deeming the controlled entity the alter ego of another are the same. *Passim*. The doctrine is equally applicable to limited liability companies. *See, e.g., Retropolis, Inc. v. 14th St. Dev. LLC*, 17 A.D.3d 209, 797 N.Y.S.2d 1 (1st Dept. 2005).

> We capsulized this view of New York law in *American Protein*, 844 F.2d 56 (2d Cir. 1988), where we observed that control, whether of the subsidiaries by the parent or the corporation by its stockholders, is the key; the control must be used to commit a

> fraud or other wrong that causes plaintiff's loss. *Id.* at 60. *See Electronic Switching Indus., Inc. v. Faradyne Elec. Corp.*, 833 F.2d 418, 424 (2d Cir. 1987) (absent a showing that "control and domination was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act" New York law will not allow a piercing of the corporate veil); *Gorrill v. Icelandair/ Flugleidir*, 761 F.2d 847, 853 (2d Cir. 1985) (same as *American Protein*).

*Wm. Passalacqua Builders*, supra, 933 F.2d at 138. The doctrine applies when individual shareholders (or members) both control and use a corporation or limited liability company as a instrumentality for "purely personal rather than corporate ends," and through the company engage in fraud or other wrongful acts against third parties, *Id.*, *citing Port Chester Elec. Constr, Corp. v. Atlas*, 40 N.Y.2d 652, 656-57, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976), *quoting Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966).

> Applying these [8]-- or any other pertinent factors -- to the infinite variety of situations that might warrant disregarding the corporate form is not an easy task because disregarding corporate separateness is a remedy that "differs with the circumstances of each case." *American Protein*, 844 F.2d at 60. The jury must decide whether -- considering the totality of the evidence, *see William Wrigley, Jr. Co. v. Waters*, 890 F.2d 594, 601 (2d Cir. 1989) -- the policy behind the presumption of corporate independence and limited shareholder liability -- encouragement of business development -- is outweighed by the policy justifying disregarding the corporate form -- the need to protect those who deal with the corporation. Blumberg, *The Law of Corporate Groups* § 6.01, at 108 ("The particular objectives and policies of the area under consideration should control.").

*Wm. Passalacqua Builders*, supra, 933 F.2d at 139.

32.   **NY DCL Article 10 Constructive Fraudulent Conveyances**. The starting point for all constructive fraudulent conveyance claims under NY DCL §§273-275 is insolvency, in one form or another. *O'Toole v. Karnani (In re Trinsum Grp., Inc.)*, 460 B.R. 379, 392 (Bankr.

---

[8] The *Passalacqua* panel listed 10 non-exclusive factors pertinent to inter-corporate relationships at p. 139.

S.D.N.Y. 2011) (dismissing claims under NY DCL §§273-275 for failure to adequately plead

insolvency).

> Every conveyance made and every obligation incurred by a person *who is or will be thereby rendered insolvent* is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.
>
> NY DCL § 273 (balance sheet or equitable insolvency)
>
> Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which *the property remaining in his hands after the conveyance is an unreasonably small capital*, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.
>
> NY DCL § 274 (insufficient working capital)
>
> Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that *he will incur debts beyond his ability to pay as they mature*, is fraudulent as to both present and future creditors.
>
> NY DCL § 275 (anticipated equitable insolvency)

33.     NY DCL §271(1), defining insolvency, provides that:

> A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

34.     The party challenging the conveyance bears the burden of proof, both as to

insolvency and lack of fair consideration. *Am. Inv. Bank, N.A. v. Marine Midland Bank, N.A.*,

191 A.D.2d 690, 595 N.Y.S.2d 537, 538 (2d Dept. 1993).

35.     Insolvency is determined at the time of the challenged transfer(s). *O'Toole v.

Karnani (In re Trinsum Grp., Inc.)*, *supra*, 460 B.R. at 392, *citing  Lippe v. Bairnco Corp.*, 249

F.2d 357, 379-80 (S.D.N.Y. 2003). Insolvency at an earlier point in time cannot be presumed

from subsequent insolvency. *See In re Nirvana Restaurant, Inc.*, 337 B.R. 495, 506 (Bankr.

S.D.N.Y. 2006).

> The character of a transaction is to be determined by the
> circumstances surrounding the parties *at the time* it took place. The
> validity of a conveyance does not depend upon subsequent events.
> The question in such cases is the financial condition of the grantor
> at the time, for if then solvent, his subsequent insolvency will not
> invalidate the conveyance." (Emphasis in original.)

*Kain v. Larkin*, 131 N.Y. 300, 308-09, 30 N.E. 105, 107 (1892); see also *Wadleigh v. Wadleigh*,

111 A.D. 367, 97 N.Y.S. 1063 (2d Dept. 1906); *O'Toole v. Karnani (In re Trinsum Grp., Inc.)*,

*supra*, 460 B.R. at 392 ("The insolvency of the transferor for the purposes of the statute cannot

be presumed from subsequent insolvency . . .", *citing Hopfan v. Knauth*, 156 Misc. 545, 549, 282

N.Y.S. 219 (Mun. Ct. 1935)).

  36. Although a plaintiff meets her burden of proof on insolvency, it is a defense that a

challenged transfer was made in repayment of antecedent debt, and that the property transferred

represented fair value for the debt discharged. NY DCL §272,[9] *O'Toole v. Karnani, supra,* 460

B.R. at 391, *Ultramar Energy v. Chase Manhattan Bank, N.A.*, 191 A.D.2d 86, 599 N.Y.S.2d

816 (1st Dept. 1993).

  37. New York ostensibly requires that both transferor and transferee have acted in

good faith. However, where cancellation of antecedent debt owed to third parties represents the

'fair equivalent' of the property transferred, good faith is presumed. *Sharp Int'l Corp. v. State St.*

---

[9] § 272. Fair consideration

  Fair consideration is given for property, or obligation.

  a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith,
property is conveyed or *an antecedent debt is satisfied* (Emphasis added.)

*Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 54 (2d Cir. 2005) (noting absence of exceptions with respect to third-party transferees); *O'Toole v. Karnani*, *supra,* 460 B.R. at 393 (Bankr. S.D.N.Y. 2011).

38.     New York recognizes an exception to the presumption of good faith for cancellation of antecedent debt owed to officers, directors, or major shareholders. *Sharp Int'l Corp. v. State St. Bank & Tr. Co., supra,* 403 F.3d at 54. The plaintiff must first prove insolvency at the time of the challenged transfer(s) for this insider exception to the antecedent debt rule to apply.  *O'Toole v. Karnani (In re Trinsum Grp., Inc.)*, 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011) (dismissing claims under NY DCL §§273-275 for failure to adequately plead insolvency), *citing Farm Stores, Inc. v. School Feeding Corp.*, 102 A.D.2d 249, 254, 477 N.Y.S.2d 374, 378 (2d Dept. 1984).

39.     **11 U.S.C. §548(a)(1)(B)(ii)(I) Constructive Fraudulent Conveyance - Insolvency.** The federal constructive fraudulent conveyance statute predicated on insolvency is §548(a)(1)(B)(ii)(I), which provides in pertinent part as follows:

> (a)  (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> (B)
> (i)  received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

"The Court of Appeals for the Second Circuit has adopted a "flexible approach to insolvency analysis." *Union Bank of Switzerland v. Deutsche Fin. Servs. Corp.,* No. 98 Civ. 3251, 2000 U.S. Dist. LEXIS 1481, 2000 WL 178278, at *8 (S.D.N.Y. Feb. 16, 2000). No rigid approach should be taken regarding the fair valuation of a company within the context of solvency analysis, but rather courts should consider the totality of the circumstances. *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.),* 78 F.3d at 38. Additionally, although not dispositive, expert appraisals and valuations should be considered, when possible, in a solvency analysis. *Id.*

"Insolvent" is defined as a "financial condition such that the sum of [the] entity's debts is greater than all of [the] entity's property, at a fair valuation…" 11 U.S.C. § 101(32)(A); *see also In re Total Technical Servs., Inc.,* 150 B.R. 893, 899 (Bankr. D. Del. 1993) ("Insolvency is defined by the general balance sheet test -- the debtor is insolvent if the sum of the debtor's debt (liabilities) is greater than all of its property at a fair valuation")

. . .

Fair valuation for a company that can continue day-to-day operations is based on a "going concern" or "market price" valuation. *In re PWS Holding Corp.,* 228 F.3d 224, 233 (3d Cir. 2000).

When a business is a going concern, fair value "is determined by the fair market price of the debtor's assets that could be obtained if sold in a prudent manner within a reasonable period of time to pay the debtor's debts." *In re Roblin Indus., Inc.,* 78 F.3d at 35.

Courts generally look at a combination of valuation methodologies to determine valuation, including: (a) actual sale price, (b) discounted cash flow method, commonly referred to as DCF, (c) adjusted balance sheet method, (d) market multiple approach, (e) comparable transactions analysis, and (f) market capitalization. (citations omitted)"

*Iridium IP LLC v. Motorola, Inc. (In re Iridium Operating LLC)*, 373 B.R. 283, 344 (Bankr. S.D.N.Y. 2007).

40.     The Trustee must show insolvency for a transfer challenged under

§548(a)(1)(B)(ii)(I) (or insufficient capitalization for a transfer challenged under or (B)(ii)(II),

infra) by a preponderance of the evidence, and at the time of the challenged transfer(s). *Iridium IP LLC v. Motorola, Inc. (In re Iridium Operating LLC)*, *supra*, 373 B.R. at 342 ("[T]he Committee has the burden of proof to show by a preponderance of the evidence that Iridium was either insolvent or inadequately capitalized at the time of any transfer made [during the applicable look-back period]").

41.     A transfer that pays (all or a portion) of an antecedent debt, dollar-for-dollar, constitutes "reasonably equivalent value" for the transfer.

> Value  . . . includes the "satisfaction or securing of a present or
> antecedent debt of the debtor." § 548(d)(2)(A). Under this
> definition, "[p]ayment of a preexisting debt is value, and if the
> payment is dollar-for-dollar, full value is given." 5 Collier on
> Bankruptcy ¶ 548.03[5] (16th ed. 2012). Therefore, to the extent a
> transfer constitutes repayment of the debtor's antecedent or
> present debt, the transfer is not constructively fraudulent. *See
> Freeland v. Enodis Corp*., 540 F.3d 721, 735 (7th Cir. 2008)

*Official Comm. of Unsecured Creditors v. Hancock Park Capital II, L.P. (In re Fitness Holdings Int'l, Inc.)*, 714 F.3d 1141, 1145-46 (9th Cir. 2013); *Southeast Waffles, LLC v. United States Dep't of Treasury (In re Southeast Waffles, LLC)*, 702 F.3d 850, 857 (6th Cir. 2012).

42.     There is no "insider exception" to the antecedent debt rule under any subsection of §548(a)(1)(B), unlike NY DCL §§273-75.

43.     **11 U.S.C. §548(a)(1)(B)(ii)(II) Constructive Fraudulent Conveyance –
Unreasonably Small Capital.** 11 U.S.C. §548(a)(1)(B)(ii)(II) provides in pertinent part as follows:

> (a)  (1) The trustee may avoid any transfer (including any transfer
> to or for the benefit of an insider under an employment contract) of
> an interest of the debtor in property, or any obligation (including
> any obligation to or for the benefit of an insider under an
> employment contract) incurred by the debtor, that was made or

incurred on or within 2 years before the date of the filing of the
petition, if the debtor voluntarily or involuntarily--

> (B)
>> (i)  received less than a reasonably equivalent value
>> in exchange for such transfer or obligation; and
>> . . .
>>
>> (ii) (II)  was engaged in business or a transaction, or
>> was about to engage in business or a transaction, for
>> which any property remaining with the debtor was
>> an unreasonably small capital;

44.     An unreasonably small capital for purposes of §548(a)(1)(B)(ii)(II) means

insufficient cash inflows to meet the company's foreseeable working capital needs, whether from

a positive cash flow generated by the company's assets, or the through the company's ability to

borrow funds to meet its working capital needs.

> In undertaking an analysis of unreasonably small capital, courts
> compare a company's projected cash inflows (also referred to as
> "working capital" or "operating funds") with the company's capital
> needs throughout a reasonable period of time after the questioned
> transfer. *Moody v. Sec. Pac. Bus. Credit, Inc.,* 971 F.2d 1056,
> 1071-72 (3d Cir. 1992); *see also Barrett v. Continental Ill. Nat'l
> Bank & Trust Co.,* 882 F.2d 1, 4 (1st Cir. 1989) (The "critical
> inquiry when considering whether a transfer or conveyance has left
> a company with an unreasonably small capital is . . . one that
> weighs raw financial data against both the nature of the enterprise
> itself and the extent of the enterprise's need for capital during the
> period in question.").

*Iridium IP LLC v. Motorola, Inc. (In re Iridium Operating LLC)*, 373 B.R. 283, 345 (Bankr.

S.D.N.Y. 2007),

45.     **11 U.S.C. §548(a)(1)(B)(ii)(III) Constructive Fraudulent Conveyance –**

**Incurring Debts Beyond Ability to Pay.** 11 U.S.C. §548(a)(1)(B)(ii)(III) provides in pertinent

part as follows:

(a)  (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

(B)

(i)  received less than a reasonably equivalent value in exchange for such transfer or obligation; and

. . .

(III)  intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured;

46.     The subsection on its face refers to a debtor's subjective intent to enter prospective equitable insolvency.

47.     **Intentional Fraudulent Transfer or Conveyance**. To recover on a claim under 11 U.S.C. §548(a)(1)(A) or NY DCL §276, the Trustee must prove the intent to hinder, delay or defraud creditors by clear and convincing evidence. *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir. 1995) (NY DCL §276, et seq.); *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646 (Bankr. E.D.N.Y. 2008) (§548(a)(1)(A)); *Glinka v. Bank of Vt.*, 130 B.R. 170 (Bankr. D.Vt. 1991) (§548(a)(1)(A)); *In re National Safe Northeast, Inc.*, 76 B.R. 896, 901-02 (Bankr. D. Ct. 1987) (both state and federal); *but see In re Livecchi*, 2014 Bankr. LEXIS 4804 (Bankr. W.D.N.Y. No. 11-02027, decided Nov. 20, 2014).

48.     Under NY DCL §276, actual intent to hinder, delay or defraud creditors means deception intentionally practiced to frustrate the legal right of another. *United States v. Brumer*, 405 F. App'x 554, 555 (2d Cir. 2011); *Southern Industries v. Jeremias*, 66 A.D.2d 178, 181, 411 N.Y.S.2d 945, 948 (2d Dept. 1978).

49.     Circumstantial evidence of actual fraudulent intent is admissible.

> Actual fraudulent intent must be proven by clear and convincing evidence, but it may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusualness of the transaction. *See McCombs*, 30 F.3d at 328. However, a transfer motivated by actual fraudulent intent may not be voided if a transferee who paid fair consideration did not have actual or constructive knowledge of such intent. *Dunham v. Tabb*, 27 Wash. App. 862, 621 P.2d 179, 182 (Wash. 1980); DCL § 278.

HBE Leasing Corp. v. Frank, 48 F.3d 623, 639 (2d Cir. 1995).

50.     **Intentional Fraudulent Transfer or Conveyance – Attorneys' Fees NY DCL §276-a**. To succeed on a claim for attorneys' fees under NY DCL §276-a requires an "explicit finding of actual intent to defraud" by both the transferor and the transferee. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Mendelsohn v. Jacobowitz (In re Jacobs)*, 396 B.R. 646, 670 (Bankr. E.D.N.Y. 2008); *Ackerman v. Kovac (In re All American Petroleum Corp.)*, 259 B.R. 6, 19 (Bankr. E.D.N.Y. 2001).

51.     **Spoliation**. The Trustee's twentieth cause of action in his First Amended Complaint is for spoliation. There is no independent cause of action for spoliation of evidence in New York.

> [N]early every lower state court in New York to examine the issue, as well as decisions of federal courts construing New York law, have "followed the majority view and do not recognize spoliation of evidence as a cognizable tort action." *Weigl v. Quincy Specialties Co.*, 158 Misc. 2d 753, 756, 601 N.Y.S.2d 774, 776 (Sup. Ct. 1993); *accord Tiano v. Jacobs*, No. 98 Civ. 6229 (DC), 2001 U.S. Dist. LEXIS 2188, at *4 (S.D.N.Y. Mar. 6, 2001); *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 586 (S.D.N.Y. 1999); *Tietjen v. Hamilton-Beach/Proctor-Silex, Inc.*, No. 97- CV-188, 1998 U.S. Dist. LEXIS 19404 (N.D.N.Y. Nov.

> 25, 1998); *Whittlesey v. Espy*, No. 96 Civ. 0671 (BSJ), 1996 U.S.
> Dist. LEXIS 17638, at *1 (S.D.N.Y. Nov. 26, 1996) ("plaintiff
> cannot allege a separate cause of action based upon a defendant's
> spoliation of evidence."); *Mondello v. Dun & Bradstreet Corp.*,
> No. 94 Civ. 4383 (RWS), 1996 U.S. Dist. LEXIS 6189, at *3 n.1
> (S.D.N.Y. May 9, 1996) (plaintiff cannot "state a claim for
> destruction of evidence under New York law.").

*Sterbenz v. Attina*, 205 F. Supp. 2d 65, 71-72 (E.D.N.Y. 2002); *see also Official Comm. of*

*Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. CV 13-5475 (JS) (AKT), 2015

U.S. Dist. LEXIS 113071 **16-17 (E.D.N.Y. Aug. 25, 2015); *Amadasu v. Bronx Leb. Hosp.*

*Ctr.*, 2005 U.S. Dist. LEXIS 774, at *38 (S.D.N.Y. Jan. 21, 2005) ("[I]t is well settled that New

York courts do not recognize the tort of spoliation of evidence"). To the extent that the Trustee

seeks sanctions for spoliation, he must proceed by motion.

52.     **Conversion**. Conversion requires an unauthorized, intentional act interfering with

the rights of another to personal property.

> A conversion takes place when someone, intentionally and without
> authority, assumes or exercises control over personal property
> belonging to someone else, interfering with that person's right of
> possession (*State of New York v Seventh Regiment Fund*, 98 NY2d
> 249, 774 NE2d 702, 746 NYS2d 637 [2002]). Two key elements of
> conversion are (1) plaintiff's possessory right or interest in the
> property (*Pierpoint v Hoyt*, 260 NY 26, 182 NE 235 [1932];
> *Seventh Regiment Fund*, 98 NY2d at 259) and (2) defendant's
> dominion over the property or interference with it, in derogation of
> plaintiff's rights (*Employers' Fire Ins. Co. v Cotten*, 245 NY 102,
> 156 NE 629 [1927]; *see also* Restatement [Second] of Torts §§ 8A,
> 223, 243; Prosser and Keeton, Torts § 15, at 92, 102 [5th ed]).

*Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50, 827 N.Y.S.2d 96, 100, 860

N.E.2d 713, 717 (NY 2006).  Magee received the proceeds of two FKF3 loans (at the request of

FKF3's manager Mitchell Klein with respect to the larger loan), and used those proceeds to pay

FKF3's creditors. Magee's actions in that regards do not constitute "dominion over the property or interference with it, in derogation of [FKF3's] rights."

53.   **Recharacterization**. The Trustee seeks (i) to recharacterize the claims filed by Magee and Commercial Construction in FKF3 from debt to equity, and (ii) to recover interest payments made to either on account of those claims.  As to the latter, recharacterization is not an affirmative cause of action for the recovery of damages (interest payments) outside of the claims allowance and distribution process that takes place in the main bankruptcy case. Rather, recharacterization is an equitable adjunct to the Bankruptcy Court's power to allow or disallow creditors' claims to a distribution from a bankruptcy estate.

> Recharacterization is appropriate when a debt transaction was actually an equity contribution from the outset. *Bayer Corp. v. MascoTech, Inc.*, 269 F.3d 726, 747-48 (6th Cir. 2001); *see also In re BH S & B Holdings LLC*, 420 B.R. 112, 157 (Bankr. S.D.N.Y. 2009) (same). Both an equitable subordination and recharacterization are claims initiated in a bankruptcy proceeding by proof of claim. *See, e.g., In re S.W. Bach & Co., 425 B.R. 78, 84 n.5* (Bankr. S.D.N.Y. 2010); *In re BH S & B Holdings LLC, 420 B.R. at 154*. They do not constitute valid causes of action outside of the bankruptcy context.

*All. Shippers, Inc. v. Garcia*, 2015 U.S. Dist. LEXIS 51316, at *4 (S.D.N.Y. No. 13-cv-4555 (KBF), decided Apr. 17, 2015).

> As a threshold matter, equitable subordination and recharacterization require filing a proof of claim: "[i]f a creditor has not filed a claim, there is nothing to subordinate nor any case or controversy to resolve." *O'Connell v. Arthur Andersen LLP (In re Alphastar Ins. Group Ltd.)*, 383 B.R. 231, 276 (Bankr. S.D.N.Y. 2008) (Bernstein, C.J.)("*Alphastar"); Gold v. Winget (In re NM Holdings Co., LLC)*, 407 B.R. 232, 2009 WL 1372982, at *45 (Bankr. E.D. Mich. 2009) (dismissing recharacterization and equitable subordination claims against defendants who did not file proofs of claim, because "there is no debt to recharacterize and no claim to subordinate"). Neither Bay Harbour, York, Shore, Prevor, nor Hilco filed proofs of claim here and the bar date has long since

> passed. Claims for equitable subordination or recharacterization
> cannot be sustained against them.

*Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings*

*LLC)*, 420 B.R. 112, 154 (Bankr. S.D.N.Y. 2009).

54.     *See also Matter of Fitness Holdings International, Inc.*, 714 F.3d 1141 (9th Cir.

2013) and *Matter of Lothian Oil, Inc.*, 650 F.3d 539 (5th Cir. 2011), holding that under *Buttner v.*

*United States*, 440 U.S. 48. S.Ct. 914, 59 L.Ed. 2d 136 (1979) and *Travelers Cas. & Sur. Co. of*

*America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450, 127 S. Ct. 1199, 167 L.Ed. 2d 1178

(2007), courts considering avoidance actions must employ state law rules on what constitutes

"debt[s]," "claim[s]" and rights in property, and that absent a state recharacterization rule, there

can be no avoidance and recovery of transfers based on the purported retroactive

recharacterization of a defendant's claim.

55.     As there is no basis for the Trustee's purported recharacterization of debt to

equity under New York law, the Trustee may not recover interest payments to Magee or to

Commercial Construction, whether directly on his eighteenth cause of action, or indirectly via

his various other avoidance claims.

56.     With respect to the Trustee's core claim to recharacterize the proofs of claim filed

by Magee and Commercial Construction in the FKF3 chapter 11 case from debt to equity for

purposes of allowance and eventual distribution in FKF3's bankruptcy case, the bankruptcy

recharacterization inquiry looks to the parties' intent at the time the defendants' funds were

infused into FKF3.

> In defining the recharacterization inquiry, courts have adopted a
> variety of multi-factor tests borrowed from non-bankruptcy
> caselaw. While these tests undoubtedly include pertinent factors,
> they devolve to an overarching inquiry: the characterization as debt
> or equity is a court's attempt to discern whether the parties called

> an instrument one thing when in fact they intended it as something
> else. That intent may be inferred from what the parties say in their
> contracts, from what they do through their actions, and from the
> economic reality of the surrounding circumstances. Answers lie in
> facts that confer context case-by-case.
>
> No mechanistic scorecard suffices. And none should, for Kabuki
> outcomes elude difficult fact patterns.

*Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 455-56 (3d Cir.

2006).

57.    **Equitable Subordination**. The rules governing equitable subordination are the

product of stare decisis, as a matter of federal general common law.

> The Bankruptcy Code itself does not delineate the standard
> for equitable subordination under Bankruptcy Code § 510(c),
> which just permits a court to subordinate allowed claims "under
> principles of equitable subordination." 11 U.S.C. § 510(c)(1).
> Rather, courts look to the three factors set out by the Fifth Circuit
> in *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692,
> 700 (5th Cir. 1977): (1) the defendant engaged in inequitable
> conduct; (2) that conduct injured other creditors or conferred an
> unfair advantage on the defendant; and (3) subordination of the
> defendant's claim is not otherwise inconsistent with the Code. *See
> also Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d
> 869, 876 (2d Cir. 1991); *In re Enron Corp.*, 379 B.R. 425, 433
> (S.D.N.Y. 2007) (Scheindlin, J.).

*Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings*

*LLC)*, *supra*, 420 B.R. at 155-56. This rule pertains only to claims allowance, etc.

## VII.    MAGEE'S CROSS-CLAIMS AGAINST MITCHELL KLEIN

58.    Magee has cross-claimed against Klein for of the breach of fiduciary duty that

Klein, as the manager of FKF3, owed to Magee, a member of FKF3. Magee respectfully refers

the Court to Section VI of this memorandum, ¶¶24-27 at pp. 15-16 for a discussion of Mr.

Klein's fiduciary obligations to Magee.

59.     Magee has asserted additional cross-claims against Klein for indemnification, if, as and to the extent the Trustee obtains a judgment against Magee in this action.

WHEREFORE, Defendants John F. Magee, Bradley Industrial Park, Inc., Commercial Construction, Inc., FKF Holding Company, LP, S.F. Properties, LLC, FKF Edgewater, LLC, Aventine Edgewater, LLC, FKF Retail, LLC, Aventine Retail, LLC And Jerry's Self-Storage, LLC, Melissa A. Magee, Patrice L. Magee, Jonathan Magee, Lizbeth Magee Keefe, Lawrence J. Keefe, Jr., And Valerie Magee seek the entry of an order dismissing the Complaint, as amended, and for such other and further relief as is just and proper.

Dated: Middletown, NY
       October 20, 2017

                                        Hayward Parker O'Leary & Pinsky

By:    /s/ Michael D. Pinsky, Esq.
        Attorneys for Defendants John F. Magee, Bradley
        Industrial Park, Inc., Commercial Construction,
        Inc., FKF Holding Company, LP, S.F. Properties,
        LLC, FKF Edgewater, LLC, Aventine Edgewater,
        LLC, FKF Retail, LLC, Aventine Retail, LLC And
        Jerry's Self-Storage, LLC
        225 Dolson Ave., Suite 303
        P.O. Box 929
        Middletown, NY 10940
        Tel: (845) 343-6227
        Fax: (845) 343-1927
        Email: mike.pinsky@hpoplaw.com

        Michael K. Burke, Esq.
        Burke, Miele & Golden, LLP
        Attorneys for Melissa A. Magee, Patrice L. Magee,
        Jonathan Magee, Lizbeth Magee Keefe, Lawrence
        J. Keefe, Jr., And Valerie Magee
        40 Matthews Street – Suite 209
        P.O. Box 216
        Goshen, NY 10924
        Tel: 845 294-4080
        Fax: 845 294-7673
        Email: mburke@bmglawyers.com