UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re

FKF 3, LLC,

                              Debtor.
-----------------------------------------------------------------X

GREGORY MESSER, as Trustee of the

FKF Trust,

                              Plaintiff,

            -against-

JOHN F. MAGEE, *et al.*,[1]

                              Defendants.
-----------------------------------------------------------------X

**OPINION AND ORDER**

13 Civ. 3601 (JCM)

        On June 6, 2018, the jury in this case rendered a unanimous verdict that resulted in a

judgment in favor of plaintiff, Gregory Messer, as Trustee of the FKF Trust ("Plaintiff"), in the

amount of $41,017,212.01. (Docket No. 110).  Before the Court are the Magee Party Defendants'

motions pursuant to Federal Rules of Civil Procedure 50 and 59, Plaintiff's motion to alter the

judgment to include prejudgment interest pursuant to Federal Rule of Civil Procedure 59(e), and

the Magee Party Defendants' motion to stay enforcement of the judgment pursuant to Federal

---

[1] The named defendants include John F. Magee ("Magee"); Mitchell L. Klein ("Klein"); Burton R. Dorfman
("Dorfman"); Melissa A. Magee; Patrice L. Magee; Jonathan Magee; Lizbeth Magee Keefe; Lawrence J. Keefe, Jr.;
Valerie Magee; FKF Holding Company, LP; FKF V Holding Co.; S.F. Properties, LLC; Commercial Construction,
Inc.; Bradley Industrial Park, Inc.; FKF Edgewater, LLC; Aventine Edgewater LLC; FKF Retail LLC; Aventine
Retail, LLC; Jerry's Self Storage, LLC; Rose Glasses, LLC; TA Group, LLC; JDJ Holding Co., LLC; Fasman,
Klein & Feldstein, LLP; and Dorfman, Knoebel & Conway, LLP (collectively, "Defendants").

Claims against defendants FKF V Holding Co.; Rose Glasses, LLC; TA Group, LLC; and JDJ Holding Co., LLC
have been settled and resolved, or a default judgment has been entered on such claims. (*See* Docket No. 39 at 1 n.1).
Plaintiff stipulated to dismissal of S.F. Properties, LLC; Fasman, Klein & Feldstein, LLP; and Dorfman, Knoebel &
Conway, LLP. (*See* Docket No. 74 at 1).  Plaintiff and Dorfman reached a settlement in this matter. (*See* Docket No.
78).  Furthermore, Plaintiff reached a settlement agreement with Lawrence Keefe and Lizbeth Magee Keefe post-
trial. (*See* Docket No. 103).

1

Rule of Civil Procedure 62.[2] (Docket Nos. 115, 119, 124). The Magee Party Defendants

requested oral argument for all three motions. (Docket Nos. 120, 126, 130). The Court finds oral

argument unnecessary. For the reasons set forth below, (1) the Magee Party Defendants'

motions pursuant to Federal Rules of Civil Procedure 50 and 59 are denied; (2) Plaintiff's motion

to alter the judgment to include prejudgment interest is granted in part and denied in part; and (3)

the Magee Party Defendants' motion to stay the enforcement of the judgment is denied without

prejudice.

## I. BACKGROUND

FKF 3, LLC ("FKF 3") is a limited liability company organized on May 26, 2004 under

Section 211 of the New York Limited Liability Company Law. (Docket No. 122-3). It is owned

in equal shares by its principals and members, Magee, a real estate developer and entrepreneur,

Klein, an accountant, and Dorfman, an attorney (collectively, the "Principals"). (Trial Tr. at 154,

156-57). Without making any capital contributions to FKF 3 in exchange for their one-third

interests, the Principals capitalized FKF 3 by soliciting loans and investments from individuals

and non-institutional creditors, many of whom had personal or professional relationships with

the Principals. (*Id.* at 157, 1407, PX-499). From 2004 to 2009, the Principals borrowed

approximately $60 million on FKF 3's behalf from their clients, friends and family members.

(Trial Tr. at 1733-34, PX-499 at 15-16).

FKF 3's business involved providing financing to contractors, developers and related

entities in connection with construction and real estate development projects. (Trial Tr. at 1405).

---

[2] The Rule 50 and Rule 59 motions and the motion to stay enforcement of the judgment are brought by Defendants Magee, Aventine Edgewater LLC, Aventine Retail, LLC, Bradley Industrial Park, Inc., Commercial Construction, Inc., FKF Edgewater, LLC, FKF Holding Company, LP, FKF Retail LLC and Jerry's Self Storage, LLC. For purposes of this decision, the moving defendants are referred to as the "Magee Party Defendants." The Magee Party Defendants are also the only parties that opposed Plaintiff's motion for prejudgment interest.

Its stated business model entailed loaning money at a slightly higher interest rate than it paid to its creditors and profiting from the difference. (*Id.* at 157, 1733-34). However, unbeknownst to FKF 3's legitimate creditors, the Principals used the majority of FKF 3's $60 million loan portfolio to fund real estate projects that were owned in whole or in part by the Principals. (*Id.* at 70, 1428-29).

From 2004 to 2009, the Principals operated FKF 3 in a constant state of insolvency, using borrowed money to pay themselves over $4 million in membership distributions and make periodic payments due to its creditors. (Trial Tr. at 157, 1414; PX-499 at 13, 22). However, by the end of 2009, FKF 3 ran out of funds necessary to continue servicing its debt obligations, prompting creditors to raise concerns. (Trial Tr. at 69-70). In June 2010, Day Seckler, an independent fiduciary, took over the operation of FKF 3. (*Id.* at 70).

On July 19, 2010, three creditors filed an involuntary petition against FKF 3 for relief under chapter 11 of Title 11 of the United States Bankruptcy Code (the "Petition Date"). (Bankr. Ct. Docket No. 1).[3] The Bankruptcy Court entered an order on April 18, 2011 confirming FKF 3's and the Unsecured Creditor Committee's First Amended Joint Plan of Liquidation (the "Plan"). (Bankr. Ct. Docket No. 250). Under the Plan, all of FKF 3's rights, claims, interests and assets were transferred to the FKF Trust, and Plaintiff was appointed as trustee.

Following an investigation, on September 12, 2011, Plaintiff commenced this action as an adversary proceeding in the Bankruptcy Court, asserting claims against the Principals and other parties based on their wrongful conduct undertaken to the detriment of FKF 3 and its legitimate creditors. *See* Adversary Proceeding Complaint, *In re FKF 3, LLC*, Adv. Pro. No. 11-

---

[3] "Bankr. Ct. Docket" refers to the docket in FKF 3's underlying bankruptcy, which can be found at *In re FKF 3, LLC*, No. 10-37170 (Bankr. S.D.N.Y.).

09074-cgm (Bankr. S.D.N.Y.). On August 30, 2016, the Honorable Kenneth M. Karas, United States District Judge, withdrew the reference as to the entire adversary proceeding. (Docket No. 11). The parties subsequently consented to conduct all proceedings before this Court pursuant to 28 U.S.C. § 636(c), (Docket No. 13), and this action proceeded to a jury trial on May 14, 2018.

On June 6, 2018, the jury returned a unanimous verdict and awarded the following: (1) on Plaintiff's breach of fiduciary duty claim the jury awarded actual damages in the amount of $2,000,000.00 to Plaintiff and against Magee; (2) on Plaintiff's breach of fiduciary duty claim the jury awarded punitive damages in the amount of $1,500,000.00 to Plaintiff and against Magee; (3) on Plaintiff's breach of fiduciary duty claim the jury awarded actual damages in the amount of $15,000,000.00 to Plaintiff and against Klein; (4) on Plaintiff's breach of fiduciary duty claim the jury awarded punitive damages in the amount of $5,000,000.00 to Plaintiff and against Klein; (5) on Plaintiff's alter ego claim the jury found that Magee and Klein were alter egos of FKF 3, but assessed no damages; (6) on Plaintiff's turnover and/or conversion claims the jury awarded damages in the amount of $1,039,000.00 to Plaintiff and against Magee in connection with Magee's collection and retention of amounts owed to FKF 3 by Diane Roberts LLC and Gregory Hayden; (7) on Plaintiff's fraudulent conveyance claims the jury awarded damages in the amount of $1,892,196.77 to Plaintiff and against defendants Magee, Aventine Edgewater, LLC and FKF Edgewater, LLC, jointly and severally; (8) on Plaintiff's fraudulent conveyance claims the jury awarded damages in the amount of $977,411.00 to Plaintiff and against defendants Magee, Aventine Retail, LLC and FKF Retail LLC, jointly and severally; (9) on Plaintiff's fraudulent conveyance claims the jury awarded damages in the amount of $8,759,220.00 to Plaintiff and against Magee in connection with a fraudulent transfer or transfers to or for the benefit of Slazer Enterprises, LLC; (10) on Plaintiff's fraudulent conveyance claims

the jury awarded damages in the amount of $1,592,541.91 to Plaintiff and against Magee and

Jerry's Self Storage, LLC, jointly and severally; (11) on Plaintiff's fraudulent conveyance claims

the jury awarded damages in the amount of $875,720.83 to Plaintiff and against Magee and FKF

Holding Company, LP, jointly and severally; (12) on Plaintiff's fraudulent conveyance claims

the jury awarded damages in the amount of $840,000.00 to Plaintiff and against Magee and

Commercial Construction, Inc., jointly and severally; (13) on Plaintiff's fraudulent conveyance

claims the jury awarded damages in the amount of $300,000.00 to Plaintiff and against Magee

and Bradley Industrial Park, Inc., jointly and severally; (14) on Plaintiff's fraudulent conveyance

claims the jury awarded damages in the amount of $175,000.00 to Plaintiff and against Jonathan

Magee; (15) on Plaintiff's fraudulent conveyance claims the jury awarded damages in the

amount of $150,000.00 to Plaintiff and against Patrice L. Magee in connection with a fraudulent

transfer to Patrice L. Magee on or around April 11, 2008; (16) on Plaintiff's fraudulent

conveyance claims the jury awarded damages in the amount of $100,000.00 to Plaintiff and

against defendants Magee and Patrice L. Magee, jointly and severally, (17) on Plaintiff's

fraudulent conveyance claims the jury awarded damages in the amount of $270,000.00 to

Plaintiff and against defendants Magee and Melissa A. Magee, jointly and severally; (18) on

Plaintiff's fraudulent conveyance claims the jury awarded damages in the amount of $310,000.00

to Plaintiff and against defendants Magee and Lizbeth Magee Keefe, jointly and severally; (19)

on Plaintiff's fraudulent conveyance claims the jury awarded damages in the amount of

$19,000.00 to Plaintiff and against defendants Magee and Valerie Magee, jointly and severally;

(20) on Plaintiff's fraudulent conveyance claims the jury awarded damages in the amount of

$217,121.50 to Plaintiff and against defendant Magee; (21) on Plaintiff's claim for avoidance of

preferential transfers the jury found that FKF 3 made preferential transfers to defendant Melissa

A. Magee in the amount of $82,250.00; and (22) on Magee's cross-claim for breach of fiduciary duty the jury awarded damages in the amount of $1,000,000.00 to cross-claimant Magee and against cross-defendant Klein. (Docket No. 110).

In total, the jury awarded $41,199,462.01 to Plaintiff, and shortly thereafter on June 29, 2018 this Court entered judgment in the amount of $41,017,212.01 (the "Judgment").[4] (Docket No. 110).

## II. THE MAGEE PARTY DEFENDANTS' RULE 50 AND RULE 59 MOTIONS

### A. Legal Standards

The Magee Party Defendants seek a new trial pursuant to Federal Rule of Civil Procedure 59(a)(1)(A), alteration of the judgment pursuant to Federal Rule of Civil Procedure 59(e), and judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).

### 1. Motion for a New Trial Pursuant to Rule 59

"A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Atkins v. N.Y. City*, 143 F.3d 100, 102 (2d Cir. 1998) (citations and quotations omitted). In considering a motion for a new trial, the Court "need not view the evidence in the light most favorable to the verdict winner." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998). However, the Court "should rarely disturb a jury's evaluation of a

---

[4] The $182,250.00 difference between the jury award and the amount of the judgment is the result of (i) a settlement between Plaintiff and defendants Lizbeth Magee Keefe and Lawrence J. Keefe, Jr., which settled and dismissed a fraudulent transfer claim in the amount of $100,000.00 after the conclusion of trial, and (ii) the Court decreasing the award for conversion/turnover against Magee by $82,250.00 in order to avoid duplicative recovery between the conversion/turnover claim and the preferential transfer claim.

witness's credibility," (*id.* at 134), and it should grant a Rule 59 motion only when the verdict is "egregious" based on the evidence presented at trial. *Id.*

If the party moving for a new trial bases its motion on an objection to a jury instruction or verdict sheet, Federal Rule of Civil Procedure 51 requires the moving party to have preserved the objection by raising it on the record prior to the jury's hearing of the instructions. Fed. R. Civ. P. 51(c)-(d); *see also Snyder v. N.Y. State Educ. Dep't*, 486 Fed. Appx. 176, 178 (2d Cir. 2012) (party moving for a new trial "may assign error based on an erroneous jury instruction 'if that party properly objected.'") (quoting Fed. R. Civ. P. 51(d)(1)). If a party fails to preserve an objection, the Court "may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2). "To constitute plain error, a court's action must contravene an established rule of law . . . and go[] to the very essence of the case." *Rasanen v. Doe*, 723 F.3d 325, 333 (2d Cir. 2013) (citations and quotations omitted). "Whether a 'substantial right' has been invaded is dependent on the circumstances of the case, and the proceedings will not be disturbed, on a post-trial motion in the district court or on appeal, unless any error of the court was truly harmful." *LNC Invs., Inc. v. First Fid. Bank*, 126 F. Supp. 2d 778, 787 (S.D.N.Y. 2001) (citation omitted).[5]

---

[5] The Magee Party Defendants argue they properly preserved all the objections to the jury instructions and verdict sheet contained in their post-judgment motions because they made a "blanket objection" prior to the jury charge. (Docket No. 141 at 13-14). The Magee Party Defendants claim a "blanket objection" exists because during a dispute over whether to include an instruction that written agreements must be signed, the Court stated, "I'm going to note that whatever I decide, one side is going to have an objection." (Trial Tr. at 2171). At defense counsel's request, the Court removed the instruction that written agreements must be signed. (*Id.* at 2172). Both sides, including the Magee Party Defendants, agreed with the jury instruction ultimately adopted by the Court. (*Id.* ("Mr. Pinsky: Your Honor, that's acceptable to me.")). Rule 51 requires that an objection state "distinctly the matter objected to and the grounds of the objection." Rule 51(c)(1). A proper objection "must direct the trial court's attention to the contention that is going to be raised on appeal." *Henry v. Wyeth Pharm.*, 616 F.3d 134, 152 (2d Cir. 2010). The Court rejects the Magee Party Defendants' argument that they made a blanket objection to the entirety of the jury instructions and verdict form and that such a general objection would satisfy the requirements of Rule 51. Moreover, the Court made it very clear that counsel's prior objections to the proposed jury instructions were not preserved and any objections to the Court's proposed jury instructions must be made on the record at the charging conference to be preserved. (Trial Tr. at 2158-59). Thus, unless the Magee Party Defendants distinctly stated the

## 2. Motion to Alter the Judgment Pursuant to Rule 59(e)

A motion to alter the judgment pursuant to Federal Rule of Civil Procedure 59(e) may be granted "only if the movant satisfies the heavy burden of demonstrating 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Hollander v. Members of the Bd. of Regents of the Univ. of the State of N.Y.*, 524 Fed. Appx. 727, 729 (2d Cir. 2013) (citations omitted). A motion to alter the judgment is an "extraordinary remed[y] to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (citations and quotations omitted). The Court will not grant a Rule 59(e) motion "unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* (citations and quotations omitted).

## 3. Motion for Judgment as a Matter of Law Pursuant to Rule 50

After a jury has returned an unfavorable verdict, Federal Rule of Civil Procedure 50(b) provides that a party "may file a renewed motion for judgment as a matter of law" no later than 28 days after trial. Fed. R. Civ. P. 50(b). "In reviewing a Rule 50 motion, a court may consider all the record evidence, but in doing so it 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Cross v. N.Y.C. Trans. Auth.*, 417 F.3d 241, 247 (2d Cir. 2005) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The moving party's burden is "particularly heavy after the jury has deliberated in the case and actually returned its verdict." *Id.* at 248. In order to grant

---

grounds for their objection on the record, the Court will assess challenges to the jury instructions and verdict sheet for plain error.

a Rule 50 motion, the Court must find there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture" or conclude there is "such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him." *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992) (citations and quotations omitted). After an unfavorable verdict, the party making a renewed motion for judgment as a matter of law pursuant to Rule 50(b) is limited to those grounds "specifically raised" in the prior motion, and the moving party is "not permitted to add new grounds after trial." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998).

In this case, prior to the jury verdict, Magee moved for judgment as a matter of law solely on the claim for alter ego liability. (Trial Tr. at 2144). Accordingly, the Court will assess the arguments in the renewed Rule 50(b) motion under the Rule 50 standard only to the extent Magee specifically raised those arguments in his prior motion. *See Galdieri-Ambrosini*, 136 F.3d at 286 (party moving post-verdict pursuant to Rule 50(b) is limited to arguments "specifically raised" in the prior motion).

## B. The Fiduciary Duty Claim

The Magee Party Defendants argue that the Court erroneously submitted the breach of fiduciary duty claim against Magee to the jury instead of resolving the claim in Magee's favor as a matter of law. (Docket No. 123 at 13-20). According to the Magee Party Defendants, a purported operating agreement, signed only by Klein, established that Klein was the sole managing member of FKF 3. (*Id.*). In the Magee Party Defendants' opinion, the unsigned operating agreement legally established that Magee was a non-managing member of FKF 3, and therefore, the issue of whether Magee owed a fiduciary duty never should have reached the jury. (*Id.*). The Magee Party Defendants premise their challenge to the fiduciary duty claim on the

jury instructions as well as the verdict sheet. (*Id.* at 14, 29-30). In response, Plaintiff contends

that the Magee Party Defendants improperly raise a novel legal argument for the first time in

post-verdict briefing and, in any event, the issue of whether Magee was a manager of FKF 3 was

an issue of fact properly decided by the jury. (Docket No. 132 at 12-18).

New York Limited Liability Company Law ("LLCL") provides that managers of a

limited liability company ("LLC") owe a fiduciary duty to the LLC and the other members of the

LLC. LLCL § 409. Members of an LLC can designate managers through the articles of

organization or a written operating agreement between the members. *Id.* §§ 102(u); 401(a).

However, where no manager is appointed in the articles of organization or in an operating

agreement, management and the accompanying fiduciary obligations vest in any member

"exercising . . . management powers or responsibilities . . ." *Id.* § 401(b); *see also Sullivan v.

Ruvoldt*, No. 16 Civ. 583 (ER), 2017 WL 1157150, at *4 (S.D.N.Y. Mar. 27, 2017) ("[I]f there is

no operating agreement, or if the operating agreement does not address certain topics, an LLC is

bound by the default requirements in the New York Limited Liability Company Law.") (citing *In

re Eight of Swords, LLC*, 946 N.Y.S.2d 248, 249 (2d Dep't 2012); *In re 1545 Ocean Ave., LLC*,

893 N.Y.S.2d 590 (2d Dep't 2010)).

In the instant motion, the Magee Party Defendants ask the Court to usurp the role of the

jury and find that the unsigned and undated operating agreement was a valid written agreement

between FKF 3's members that precluded a fiduciary duty claim against Magee as a matter of

law. Notably, despite their contention that the existence of a fiduciary duty "is a question of law

for the court," (Docket No. 123 at 13), the Magee Party Defendants never moved for summary

judgment on the fiduciary duty claim against Magee. Magee's pre-verdict motion for judgment

as a matter of law did not address the breach of fiduciary duty claim against him. (Trial Tr. at

2139, 2144).  The Magee Party Defendants' proposed jury instructions explicitly ask the jury to make a factual finding concerning the existence of a fiduciary relationship between Magee and FKF 3 and do not suggest in any way that the existence of a fiduciary relationship is a legal question reserved for the Court. (Docket No. 44 at 41- 42).  The Magee Party Defendants also agreed with the jury instructions ultimately adopted by the Court with respect to whether Magee owed a fiduciary duty to FKF 3. (Trial Tr. at 2172-76).  With respect to the verdict sheet, the Magee Party Defendants preserved their objection concerning whether the Court erroneously refused to ask the jury if "Mitchell Klein was *the* managing member of FKF 3?" *Id.* at 2231-32 (emphasis added).

The jury instructions and verdict sheet properly asked the jury to determine if Magee was a manager of FKF 3.  There was and still is no basis for the Court to draw the legal conclusion that Magee did not owe FKF 3 a fiduciary duty solely by operation of the unsigned operating agreement.  *See, e.g.*, *Spires v. Casterline*, 778 N.Y.S.2d 259, 264 (N.Y. Sup. Ct. 2004) (a document signed only by the company's president "cannot be considered a written agreement of the members" because "[t]he members did not execute th[e] document").[6]  Under New York law, "the existence of a contract is a factual determination." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 389 (S.D.N.Y. 2005).  Whether a valid contract exists turns on "mutual assent," which is a "question of fact to be found by the jury" and can be determined

---

[6] The Magee Party Defendants' cited authority misses the mark.  In *223 Sam, LLC v. 223 15th St., LLC*, 77 N.Y.S.3d 83 (2d Dep't 2018), the court found on a motion for summary judgment that an unsigned operating agreement *created* triable issues of fact as to whether the parties intended to be bound by its terms.  While there were facts that supported an inference that the parties intended to be bound by an unsigned operating agreement, the court notably did not resolve the issue as a matter of law at the summary judgment stage in either party's favor. *Id.*  In *Shapiro v. Ettenson*, 45 N.Y.S.3d 439 (1st Dep't 2017), the outcome turned on whether two members, who indisputably voted in favor of adopting an operating agreement, possessed a majority interest of the members' votes sufficient to adopt the operating agreement under the LLCL.  Here, it is highly disputed if any member other than Klein agreed to or approved the terms of the purported operating agreement.

based on a "'manifestation or expression of assent . . . by word, act, or conduct which evinces the intention of the parties to contract.'" *Id.* (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)). "The totality of parties' acts, phrases and expressions must be considered, along with 'the attendant circumstances, the situation of the parties, and the objectives they were striving to attain.'" *Id.* (citation omitted). Here, the validity of the unsigned operating agreement, and the FKF 3 members' respective fiduciary duties, was a fiercely contested factual dispute properly submitted to and determined by the jury. The Magee Party Defendants have, therefore, failed to demonstrate that the Court erroneously submitted to the jury the issue of whether Magee was a manager of FKF 3 and owed the company a fiduciary duty.

The Magee Party Defendants also failed to demonstrate that the jury's determination that Magee served as a manager of FKF 3 was "egregious" and "against the weight of the evidence." *DLC Mgmt.*, 163 F.3d at 133-34. First, the evidence casts serious doubt on whether the purported operating agreement was a valid written agreement between FKF 3's members sufficient to override the default provisions supplied by the LLCL. The purported operating agreement was undated and signed only by Klein. (Pl. Ex. B). Klein acknowledged that he was the only member of FKF 3 who signed the purported operating agreement and had no recollection of when he signed it. (Trial Tr. at 1111-12). Magee and Dorfman did not know when the purported operating agreement was created or signed by Klein. (*Id.* at 151, 889). Magee testified he did not agree to any of the purported operating agreement's terms and saw it for the first time in June of 2010, about 6 years after FKF 3 was formed. (*Id.* at 151-52). Magee also could not recall discussing the formal formation and operation of FKF 3 with Klein and Dorfman. (*Id.* at 151-52, 155). Magee further testified that the ownership interests of FKF 3 outlined in the purported operating agreement (Magee, 33%, Klein, 1%, and John Magee Family

Partnership, 66%) were incorrect because FKF 3 was owned equally by Magee, Dorfman and Klein. (*Id.* at 153-54). Dorfman similarly testified that because he did not sign the purported operating agreement, he did not agree to its terms. (*Id.* at 723).

Second, the evidence amply supports the jury's finding that, in the absence of a written operating agreement between the members, Magee exercised management powers or responsibilities over FKF 3 and consequently owed the company fiduciary duties. Plaintiff presented evidence that each member brought a different expertise to FKF 3 that was necessary for the company's management. While Klein served as the accountant and Dorfman acted as the company's attorney, Magee described himself as the "construction guy" who used his real estate development experience to collect money owed to FKF 3. (Trial Tr. at 156). Klein testified that Magee was "involved in loan decisions" and was "involved in the collection of loans." (*Id.* at 1109). Klein and Dorfman agreed that Klein could not make unilateral decisions concerning FKF 3, and all three members had to agree to make a loan. (*Id.* at 727-29, 1108-09). According to Klein, he lacked experience in real estate development or lending, and his role of manager was a "title" given to him as a result of his accounting background, which allowed him to "run the checkbook." (*Id.* at 1103-04, 1108-09). Klein further testified that starting in 2005, Klein, Magee and Dorfman were each identified as a general partner or managing member on FKF 3's tax returns because "John [Magee], Burt [Dorfman] and [Klein] were all equally managing the FKF 3." (*Id.* at 1121; *see also* PX-31 at 7). The Principals each owned a third of the company and monthly distributions were split equally. (Trial Tr. at 150, 157). FKF 3's business partners also believed the Principals, including Magee, were all decision makers. (*Id.* at 2039, 2054). This evidence was more than sufficient for the jury to determine Magee was a manager of FKF 3 and owed the company fiduciary obligations.

Accordingly, the jury instructions and verdict sheet correctly tasked the jury with determining if Magee owed a fiduciary duty to FKF 3, and there is no legal or factual basis for the Court to disturb the jury's deliberate findings.

## C.  The Adverse Inference Against Klein

The Magee Party Defendants argue Klein's invocation of the Fifth Amendment "warranted a stern adverse inference in favor of the moving defendants, the only parties before the jury, who were prejudiced as a result of their inability to fully cross-examine him." (Docket No. 123 at 21).  This argument is meritless.  The Court adopted the Magee Party Defendants' proposed jury instruction regarding the adverse inference against Klein in its entirety (*compare* Docket No. 44 at 12 with Trial Tr. at 2355), and the Magee Party Defendants did not object to the adverse inference instruction prior to the jury charge.

The jury instruction proposed by the Magee Party Defendants and accepted by the Court instructed the jurors that they were "permitted to draw the inference that the withheld information would have been unfavorable to Mr. Klein" provided that any inference drawn against Klein "should be based upon all the facts and circumstances in this case as you may find them." (Trial Tr. at 2355-56).  The Magee Party Defendants have failed to demonstrate that this instruction, which they submitted, was plain error or impaired their substantial rights.

## D.  *In Pari Delicto*[7]

The Magee Party Defendants argue the Court improperly instructed the jury on the *in pari delicto* doctrine by ruling that Magee could not raise *in pari delicto* as a defense to Plaintiff's claims for conversion and breach of fiduciary duty. (Docket No. 123 at 30-35).  The

---

[7] This section is taken in large part from the Court's May 8, 2018 order addressing the parties' motions *in limine*. (Docket No. 86).

parties agree the Court's instruction on *in pari delicto* should be reviewed for plain error. (Docket No. 123 at 34-35; Docket No. 132 at 22). By way of background, on May 8, 2018, in its decision on the parties' motions *in limine*, the Court held: (1) an *in pari delicto* instruction on the conversion claim would be needlessly confusing because a jury could not find Magee liable for conversion without also finding that the adverse interest exception applied; and (2) *in pari delicto* does not apply to claims of breach of fiduciary duty asserted by companies (or trustees standing in the shoes of companies) against company insiders such as Magee. (Docket No. 86 at 6-13). Accordingly, the Court did not provide the jury with an *in pari delicto* instruction with respect to these two claims. As set forth below, the Court does not find plain error in its prior ruling on the applicability of the *in pari delicto* defense and denies the Magee Party Defendants' motion in this regard.

### 1. The *In Pari Delicto* Doctrine

The *in pari delicto* doctrine is as an affirmative defense under New York law that "mandates that the courts will not intercede to resolve a dispute between two wrongdoers." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464 (2010). The doctrine "'bars a party that has been injured as a result of its own intentional wrongdoing from recovering for those injuries from another party whose equal or lesser fault contributed to the loss.'" *In re ICP Strategic Credit Income Fund Ltd.*, 568 B.R. 596, 610 (S.D.N.Y. 2017) (quoting *Flaxer v. Gifford (In re Lehr Constr. Corp.)*, 551 B.R. 732, 739 (S.D.N.Y. 2016), *aff'd*, 666 Fed. Appx. 66 (2d Cir. 2016)), *aff'd*, 2018 WL 1902400 (2d Cir. Apr. 23, 2018). In the bankruptcy setting, the "debtor's misconduct is imputed to the trustee because, innocent as he may be, he acts as the debtor's representative." *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 63 (2d Cir. 2013).

### i. Imputation

"Traditional agency principles play an important role in an *in pari delicto* analysis . . . namely, the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals." *Kirschner*, 15 N.Y.3d at 465. A corporation or limited liability company is "responsible for the acts of its authorized agents even if particular acts were unauthorized." *Id.* "Agency law presumes imputation even where the agent acts less than admirably, exhibits poor business judgment, or commits fraud." *Id.* Thus, "all corporate acts—including fraudulent ones—are subject to the presumption of imputation." *Id.* at 466.

### ii. Adverse Interest Exception to Imputation

The adverse interest exception is a narrow exception to the presumption of imputation. It exists "where the corporation is actually the victim of a scheme undertaken by the agent to benefit himself or a third party personally, which is therefore entirely opposed (i.e., 'adverse') to the corporation's own interests." *Kirschner*, 15 N.Y.3d at 467. The adverse interest exception applies only where the agent has "*totally abandoned* his principal's interests" and is "acting *entirely* for his own or another's purposes." *Id.* at 466. In *Kirschner*, the New York Court of Appeals characterized the adverse interest exception as the "most narrow of exceptions," which is reserved "for those cases—outright theft or looting or embezzlement—where the insider's misconduct benefits only himself or a third party; i.e., where the fraud is committed *against* a corporation rather than on its behalf." *Id.* at 466–67. The New York Court of Appeals cautioned that *in pari delicto* "applies even in difficult cases and should not be 'weakened by exceptions.'" *Id.* at 479 (quoting *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 470 (1960)).

## 2. Conversion

Under New York law, a conversion is a tort that "takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (2006). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Id.* (citations omitted).

Here, Plaintiff premised its conversion claim on two instances where Magee took loan proceeds that belonged to FKF 3 for himself. (*See* Docket No. 2-3 at ¶¶ 1222–29). Magee denied taking FKF 3's money for himself and asserted that he collected moneys that were owed to FKF 3—in one instance at the request of Klein and in another instance to prevent the dissipation of FKF 3's funds—and paid the money he collected in furtherance of FKF 3's business and in repayment of FKF 3's creditors. (*See* Docket No. 36 at 51). A finding that Magee was liable for conversion would also require the jury to find that Magee intentionally and without authority exercised control over FKF 3's money *in derogation of FKF 3's rights*. Plaintiff's conversion claim was based on an assertion that FKF 3 was "the victim of a scheme undertaken by [Magee] to benefit himself or a third party personally." *Kirschner*, 15 N.Y.3d at 467. Indeed, the New York Court of Appeals in *Kirschner* expressly identified "theft or looting or embezzlement" of a corporation's property as the prototypical cases in which the adverse interest exception applies. *Id.* at 466. At oral argument held on April 23, 2018, Magee's counsel acknowledged the poor fit between the doctrine of *in pari delicto* and Plaintiff's conversion claim. (Docket No. 86 at 9).

Under these circumstances, the Court concluded that no reasonable juror could find both (1) that Magee committed the alleged conversion of FKF 3's money, and (2) that the adverse

interest exception does not apply. In an effort to avoid providing the jury with a needlessly confusing *in pari delicto* instruction, the Court did not provide an *in pari delicto* instruction to the jury with respect to Plaintiff's conversion claim. The Magee Party Defendants have failed to demonstrate that the Court's prior ruling was plain error.

### 3. Breach of Fiduciary Duty

Numerous courts applying New York law—both before and after the New York Court of Appeals decided *Kirschner*—have recognized a limitation on the doctrine's application to claims against insider fiduciaries. *See, e.g.*, *United States v. Hatfield*, No. 06-CR-0550 (JS)(AKT), 2015 WL 13385926, at *6 (E.D.N.Y. Mar. 27, 2015) ("[W]hile the doctrine precludes a company from suing a <u>third party</u> for aiding the fraud of its insiders, it does not prevent the company from suing the insiders themselves."); *Teras Int'l Corp. v. Gimbel*, No. 13–cv–6788–VEC, 2014 WL 7177972, at *10 (S.D.N.Y. Dec. 17, 2014) ("Claims against insiders for their acts as corporate fiduciaries are not barred by *in pari delicto*[.]") (internal quotations marks and citation omitted); *Walker, Truesdell, Roth & Associates, Inc. v. Globeop Fin. Servs. LLC*, No. 600469/09, 2013 WL 8597474, at *10 (N.Y. Sup. Ct. May 27, 2013) (recognizing "the unexceptional proposition that the *in pari delicto* doctrine bars litigation by a corporation against third parties and not against the officers or agents whose wrongdoing has been imputed to the corporation"), *aff'd sub nom. New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Europe) B.V.*, 41 N.Y.S.3d 1 (1st Dep't 2016); *In re Mediators, Inc.*, 105 F.3d 822, 826–27 (2d Cir. 1997) ("We agree that a bankruptcy trustee, suing on behalf of the debtor under New York law, may pursue an action for breach of fiduciary duty against the debtor's fiduciaries.").[8]

---

[8] *See also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 987 F. Supp. 2d 311, 320 (S.D.N.Y. 2013) ("[A]n exception to [*in pari delicto*] exists for claims by the Trustee against corporate insiders for breaches of their fiduciary duties."); *Picard v. Estate of Madoff*, 464 B.R. 578, 584 (S.D.N.Y. 2011) ("[I]t is well established that the . . . *in pari delicto* rules do not apply to actions of fiduciaries who are insiders."); *In re Optimal U.S. Litig.*, 813 F.

In a departure from the decisions mentioned above, the district court in *Lehr* opined that it did not "see a foundation for the 'insider' exception to imputation for purposes of the *in pari delicto* defense as it exists *under New York law*." 551 B.R. at 739. The discussion in *Lehr* regarding the existence of the insider exception was dicta because the court found that, regardless, the defendant was "not an officer or director, nor did he exert control over Lehr such that he could be considered an insider." 551 B.R. at 744. In a summary order, the Second Circuit affirmed the district court's decision while expressly declining to address whether "New York courts recognize or would recognize" an insider exception. 666 Fed. Appx. at 70.

The district court in *Lehr* reasoned that there cannot be an "insider" exception under New York law because, in *Kirschner*, the New York Court of Appeals identified the adverse interest exception as the only exception to the doctrine of *in pari delicto*. 551 B.R. at 739. In *Kirschner*, however, the New York Court of Appeals was clearly focused on claims against outsiders.[9] The *Kirschner* court held that *in pari delicto* barred a bankruptcy trustee's claims against a "corporation's outside professional advisers, such as auditors, investment bankers, financial advisers and lawyers," who allegedly assisted corporate insiders in defrauding the corporation's creditors. 15 N.Y.3d at 457. The *Kirschner* court stated directly: "This case reduces down to

---

Supp. 2d 383, 400 (S.D.N.Y. 2011) ("It bears noting that in pari delicto 'does not apply to the actions of fiduciaries who are insiders in the sense that they either are on the board or in management, *or in some other way control the corporation*.'"); *Glob. Crossing Estate Representative v. Winnick*, No. 04 CIV. 2558(GEL), 2006 WL 2212776, at *15 (S.D.N.Y. Aug. 3, 2006) ("'[I]n pari delicto' rules do not apply to claims against corporate insiders for breach of their fiduciary duties."); *In re Granite Partners, L.P.*, 194 B.R. 318, 332 (Bankr. S.D.N.Y. 1996) ("*In pari delicto* bars claims against third parties, but does not apply to corporate insiders or partners.").

[9] *See In re Refco Inc. Sec. Litig.*, No. 07-MD-1902, 2011 WL 6091700, at *3 (S.D.N.Y. Nov. 27, 2011) ("It is important to note that the Refco Trustee's claims against the [insider] Defendants were *not* dismissed by the Order in *Kirschner* . . . . The [insider] Defendants were not parties to *Kirschner v. KPMG*, and even if they had been parties, the *in pari delicto/Wagoner* would have been inapplicable to them because Kirschner's claims against the [insider] Defendants were grounded in those Defendants' role as Refco insiders. . . . Tellingly, the [insider] Defendants did not move to dismiss on *in pari delicto/Wagoner* grounds[.]"), *report and recommendation adopted by* 2012 WL 527348 (S.D.N.Y. Feb. 16, 2012).

whether, and under what circumstances, we choose to reinterpret New York common law to permit corporations *to shift responsibility for their own agents' misconduct to third parties.*" *Id.* at 475 (emphasis added). This reasoning does not apply to breach of fiduciary duty claims against corporate insiders.

Courts have expounded on their reasons for not extending the *in pari delicto* defense to insiders. Some courts have reasoned that "[t]he rationale for the insider exception to the *in pari delicto* doctrine stems from the agency principles upon which the doctrine is premised; a corporate insider, whose wrongdoing is typically imputed to the corporation, should not be permitted to use that wrongdoing as a shield to prevent the corporation from recovering against him." *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 124 n.26 (Bankr. S.D.N.Y. 2011). In other words, "it would be absurd to allow a wrongdoing insider to rely on the imputation of his own conduct to the corporation as a defense." *Teras*, 2014 WL 7177972, at *10 (quoting *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07–MD–1902(JSR), 2010 WL 6549830, at *15 (S.D.N.Y. Dec. 6, 2010), *adopted in relevant part by* 797 F. Supp. 2d 372, 377 (S.D.N.Y. 2011)). Other courts have reasoned similarly that the "element of mutual fault" is not present in cases against insiders, thereby rendering the defense unavailable. *In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. 488, 532 (S.D.N.Y. 2015) (quoting *In re KDI Holdings, Inc.*, 277 B.R. 493, 518 (Bankr. S.D.N.Y. 1999)).[10]

---

[10] With the exception of *Lehr*, which the Court discusses above, the cases cited by the Magee Party Defendants do not squarely address the issue before the Court. The cases cited by the Magee Party Defendants barred claims against third parties, but they do not bear on the question of whether under New York law *in pari delicto* applies to claims against insiders who stand in a fiduciary relationship with the plaintiff corporation. *See Kirschner v. KPMG LLP*, 626 F.3d 673, 674 (2d Cir. 2010) (addressing whether *in pari delicto* prevented a trustee from recovering against third parties); *In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d at 64 (barring claims asserted by the trustee against "third parties" who "participat[ed] in a fraud that [the debtor] orchestrated."); *In re ICP Strategic Income Fund, Ltd.*, 730 Fed. Appx. 78 (2d Cir. 2018) (*in pari delicto* barred a trustee's claim for aiding and abetting breach of fiduciary duty against a third-party law firm); *Saratoga Cnty. Bank v. King*, 44 N.Y. 87, 94 (1870) (vendor and vendee in a contract dispute were *in pari delicto*); *Trainor v. John Hancock Mut. Life Ins. Co.*, 445 N.Y.S.2d 81 (1981) (insurance company and insured were *in pari delicto*); *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86-87 (2d

Most persuasively, "extending *Kirschner's in pari delicto* holding to bar claims by a company against its insiders would announce a rule that would prevent, in nearly every instance, a corporation from being able to hold its fraudulent insiders accountable." *Hatfield*, 2015 WL 13385926, at *6; *see also Sec. Investor Prot. Corp.*, 987 F. Supp. 2d at 322 ("The purpose of the insider exception is to hold fiduciaries responsible for their conduct as control persons."); *In re Granite*, 194 B.R. at 332 ("*In pari delicto* . . . does not apply to corporate insiders or partners. Otherwise, a trustee could never sue the debtor's insiders on account of their own wrongdoing.").

At oral argument prior to trial, Magee's counsel acknowledged that Magee's proposed interpretation of *Kirschner* would preclude a bankruptcy trustee from ever asserting a breach of fiduciary duty claim under New York law unless the adverse interest exception applied. (Docket No. 86 at 12). If adopted, this interpretation would mean that no corporation, limited liability company or other principal could assert a breach of fiduciary duty claim under New York law unless the adverse interest exception applied—that is, unless the fiduciary had "totally abandoned" the principal's interests. Such a result is illogical and would transform the duties of care and loyalty under New York law. *Cf. Keene Corp. v. Coleman (In re Coleman)*, 164 B.R. 844, 853 (Bankr. S.D.N.Y. 1994) ("Section 720 of New York's Business Corporation Law expressly authorizes a corporation or bankruptcy trustee to sue the corporation's officers and directors for breach of fiduciary duty[.]").

---

Cir. 2000) (addressing whether the Wagoner rule precludes a trustee's claims against a third party); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) (same).

Therefore, this Court agreed with what appears to be the majority view: under New York law the doctrine of *in pari delicto* does not apply to claims of breach of fiduciary duty asserted by companies against company insiders.

There is no dispute that Magee held a one-third membership interest in FKF 3. (*See* Docket No. 34 at 16). Plaintiff claimed that Magee was not only a member of FKF 3 but also one of its managers; whereas, Magee maintained that Klein was FKF 3's sole manager. (*Compare* Docket No. 39 at 34, *with* Docket No. 37 at 16). The parties agreed that, to find Magee liable for breach of fiduciary duty, the jury must necessarily find that Magee was a manager of FKF 3. (*See* Docket No. 36 at 42; Docket No. 42 at 23). *See also Kalikow v. Shalik*, 986 N.Y.S.2d 762, 768 (Sup. Ct. 2014) ("[A] member who is not a manager does not owe a duty to the LLC or its members except to the extent he or it participates in the management of the LLC." (quoting 1 N.Y. Prac., New York Limited Liability Companies and Partnerships § 1:8)). In other words, to find Magee liable for breach of fiduciary duty, the jury must necessarily find that Magee was an FKF 3 insider, thereby rendering the doctrine of *in pari delicto* inapplicable.[11] Accordingly, the Court declined to provide an *in pari delicto* instruction to the jury with respect to Plaintiff's breach of fiduciary duty claim against Magee. The Magee Party Defendants have not shown that the Court's ruling was plain error.

**E. Alter Ego Liability**

Finally, the Magee Party Defendants argue the alter ego liability instruction against Magee was improper because "giving the instruction and having the jury deliberate on the issue globally poisoned the deliberations against John [Magee]." (Docket No. 123 at 35). Plaintiff

---

[11] For purposes of the application of *in pari delicto* under New York law in this case, the terms "fiduciary," "manager" and "insider" are essentially coextensive when describing Magee's relationship to FKF 3—though the terms are not equivalent generally.

maintains that numerous facts developed at trial warranted submitting the alter ego claim to the

jury, and the evidence adduced formed a sufficient basis for the jury to conclude that Magee was

an alter ego of FKF 3. (Docket No. 132 at 23-24).

After the close of evidence, Magee moved for judgment as a matter of law on Plaintiff's

alter ego claim on the grounds that there was "absolutely no evidence" indicating that Magee

exercised complete dominion and control over FKF 3. (Trial Tr. at 2144). The Court denied

Magee's pre-verdict motion because numerous factual disputes precluded the Court from

entering a directed verdict, including the issue of whether Magee used FKF 3 as a vehicle to fund

his own projects and for his own personal benefit. (*Id.* at 2145, 2148). In accordance with New

York alter ego liability law, the Court subsequently instructed the jury it could pierce the

corporate veil based on alter ego liability if (1) "the limited liability members completely

controlled the limited liability company and did not treat it as a separate business entity;" and (2)

"the limited liability company's members used their complete control to commit fraud or a

dishonest or an unjust act in violation of an injured party's rights." (Trial Tr. 2371). In the

Magee Party Defendants' renewed Rule 50 motion, they challenge the first prong of alter ego

liability -- complete control -- and they claim judgment as a matter of law is warranted because

the evidence proves Magee was not acting purely for his own personal ends and that Klein, not

Magee, controlled the books and records of FKF 3, rendering it impossible for Magee to exercise

complete dominion and control over FKF 3. (Docket No. 123 at 36).

The Magee Party Defendants have not met their "heavy burden" of establishing a

"complete absence of evidence supporting the verdict." *Cash v. Cnty. Of Erie*, 654 F.3d 324, 333

(2d Cir. 2011) (citations and quotations omitted). In determining whether "complete control"

exists for purposes of finding alter ego liability, a fact finder may consider the following factors:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1053 (2d Cir. 1997); *see also* Trial Tr. at 2371-72. In this case, the record before the jury was replete with examples of Magee's control over FKF 3. Without making any capital contributions to FKF 3, Magee and his designees received $1.449 million in distributions, consisting solely of borrowed funds. (Trial Tr. at 1108, 1414, PX-499 at 22). Any money that Magee loaned to FKF 3 received a 12% interest rate, the highest interest rate paid to any FKF 3 creditor. (Trial Tr. at 1409-10). The evidence also overwhelmingly shows that Magee used borrowed money from FKF 3 to fund his own personal projects, including costly retail projects conducted through Magee's companies or companies he held a significant interest in. (*Id.* at 70, 1428-29; PX-507). In 2009, when FKF 3 stopped making regular monthly distributions to its members, Magee began collecting money from FKF 3's borrowers personally and retained that money in his personal bank account.[12] (*Id.* at 309, 334, 846; PX-267, 268, 273, 438).

Accordingly, the Court denies the Magee Party Defendants' renewed motion for judgment as a matter of law on the alter ego liability claim pursuant to Rule 50(b). The Magee Party Defendants also have not met their burden for a new trial or alteration of the judgment on

---

[12] The Magee Party Defendants' argument that Magee could not exercise complete control over FKF 3 because Klein controlled the books and records does not preclude the jury's alter ego finding against Magee. In this case, the jury found that both Magee and Klein were alter egos of FKF 3 who used FKF 3 to further their personal business. There is no reason, and Defendants do not point to any authority, to prohibit two members of an LLC from being held accountable under a theory of alter ego liability.

this claim because they have not shown that the jury's finding that Magee was an alter ego of FKF 3 was "clear error," "seriously erroneous" or resulted in a "miscarriage of justice." *Atkins*, 143 F.3d at 102; *Hollander*, 524 Fed. Appx. at 729.

The Magee Party Defendants' motions pursuant to Federal Rules of Civil Procedure 50 and 59 are therefore denied.

## III. PLAINTIFF'S MOTION TO ALTER THE JUDGMENT

Plaintiff moves for prejudgment interest, pursuant to Federal Rule of Civil Procedure 59(e), on the following: (1) fraudulent conveyances under the New York Debtor and Creditor Law (the "NY DCL") and the Bankruptcy Code; (2) actual damages awarded on the breach of fiduciary duty claims; and (3) the turnover/conversion claim.[13] (Docket No. 116). The question before the Court is whether Plaintiff is entitled to prejudgment interest, and if so, the appropriate amount of prejudgment interest Plaintiff should recover.

### A. Prejudgment Interest on the Fraudulent Conveyances

### 1. Availability of Prejudgment Interest

The parties disagree over the availability of prejudgment interest on Plaintiff's fraudulent conveyance claims. The Magee Party Defendants argue Plaintiff waived prejudgment interest by allegedly failing to include a demand for prejudgment interest on its fraudulent conveyance claims in its complaint. (Docket No. 128 at 15). Plaintiff responds that it asked for prejudgment interest in its pleading by demanding the "net value" of the fraudulent conveyances, and even so, failure to demand prejudgment interest in the complaint does not result in waiver. (Docket No. 134 at 5-7).

---

[13] Plaintiff does not seek prejudgment interest on the judgments against the Magee Children, which totaled $1,106,250.00 and have already been satisfied. (Docket No. 116 at 7 fn. 2).

The Magee Party Defendants rely on Rule 54(c) of the Federal Rules of Civil Procedure for their proposition that Plaintiff waived prejudgment interest on the fraudulent conveyance claims. (Docket No. 128 at 15). Rule 54(c) states, in full: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. *Every other final judgment* should grant the relief to which each party is entitled, *even if the party has not demanded that relief in its pleadings*." Fed. R. Civ. P. 54(c) (emphasis added). Courts in this Circuit regularly grant a prevailing party's request for prejudgment interest even where the prevailing party did not include the demand in its pleadings, except in the case of default judgements. *See Stanford Square, LLC v. Nomura Asset Capital Corp.*, 232 F. Supp. 2d 289, 291 (S.D.N.Y. 2002) ("In applying [Rule 54(c)], the Second Circuit has clearly established that the prevailing party's failure to request interest in its pleadings does not constitute waiver of the right to prejudgment interest.") (collecting cases). Therefore, Plaintiff did not waive recovery of prejudgment interest.[14]

The Court has discretion to award prejudgment interest on fraudulent conveyance claims arising under the NY DCL and the Bankruptcy Code. *See, e.g.*, *In re Palermo*, 739 F.3d 99, 107 (2d Cir. 2014) (courts have discretion in awarding prejudgment interest on fraudulent conveyance claims under the NY DCL); *In re 1031 Tax Grp., LLC*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010) (for fraudulent conveyances avoided under the Bankruptcy Code "courts have typically relied on the word 'value' in section 550(a) as authorizing an award of interest."). In determining a discretionary award of prejudgment interest, courts consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the

---

[14] The Court need not reach the question of whether a plaintiff's request for the "net value" of a fraudulent conveyance is sufficient to preserve a later claim for prejudgment interest in the event of a default judgment.

relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co. v. Local Union No. 3, Int'l Brotherhood of Elec. Workers, AFL-CIO*, 955 F.2d 831, 834 (2d Cir. 1992). The purpose of prejudgment interest is not to punish Defendants or to provide Plaintiff with a windfall, rather prejudgment interest is "an element of [the plaintiff's] complete compensation" that aims to "make the plaintiff[] whole . . ." *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (citations and quotations omitted). "Courts in the Second Circuit and in this district have recognized that the award of prejudgment interest is discretionary, and absent a sound reason to deny prejudgment interest, such interest should be awarded." *In re 1031 Tax Grp.*, 439 B.R. at 87 (citing *Jones*, 223 F.3d at 139). "The court must, however, explain and articulate its reasons for any decision regarding prejudgment interest." *Henry v. Champlain Enter., Inc.*, 445 F.3d 610, 623 (2d Cir. 2006).[15]

Plaintiff argues prejudgment interest will more fully compensate FKF 3 and, by consequence, its creditors and allow them to recover a small portion of what they otherwise would have been entitled to absent Defendants' wrongful conduct. (Docket No. 116 at 25). In response, the Magee Party Defendants reiterate their position that Magee was an innocent bystander to FKF 3's collapse, victimized by Klein and Dorfman who "cooked" FKF 3's books and records through no fault of his own. (Docket No. 128 at 6). The Magee Party Defendants

---

[15] "[W]here there is a basis for concluding that the jury has included prejudgment interest in its damages award, New York law does not permit a duplicative judicial award." *BPP Wealth, Inc. v. Weiser Capital Mgmt., LLC*, 623 Fed. Appx. 7, 11 (2d Cir. 2015). However, a court may award prejudgment interest where "there is no reliable indication that the jury's . . . verdict included prejudgment interest." *Id.* In this case, there is no indication the jury verdict includes prejudgment interest. Moreover, the amounts awarded on the fraudulent conveyance claims are identical (or nearly identical) to the amounts requested prior to the inclusion of prejudgment interest. (*See, e.g.*, PX-316, 341, 435, 507, 511, 512, 513). Therefore, the Court is free to award prejudgment interest without running the risk of a duplicative award.

blame FKF 3's losses on the economic decline in 2008 and argue Magee and his family's own monetary losses militate against an award of prejudgment interest. (*Id.* at 7-8).

The Court finds in its discretion that some measure of prejudgment interest is warranted in this case. The jury found that Defendants' actions directly damaged FKF 3. Plaintiff's losses stemmed, in part, from numerous fraudulent transfers meant to hinder creditors from recovering what was owed to them by FKF 3. While in operation, FKF 3 paid monthly interest to its creditors at an annual contractual rate between nine and twelve percent, and that interest has continued to accrue against the FKF Trust. (Trial Tr. at 1409, 1734, PX-235). The Court considers the loss of interest, the diminished value of the damages award due to the passage of time, and Plaintiff's lost opportunity to make use of the lost funds. With these considerations in mind, the Court finds that an award of prejudgment interest in this case will more adequately compensate Plaintiff for the lost value of the funds it would have been entitled to absent Defendants' depletion of FKF 3's resources.

The Magee Party Defendants' various appeals to equity do not foreclose the availability of prejudgment interest. The Magee Party Defendants' argument that Magee was categorically uninvolved in any wrongdoing has already been considered and rejected by the jury. Magee's claim that he was a victim of Klein's and Dorfman's schemes is belied by the jury's finding of liability and award of compensatory and, on some claims, punitive damages against Magee. Nor does Dorfman and Klein's alleged delay during litigation prevent Plaintiff from recovering prejudgment interest against the Magee Party Defendants. The Court is also unpersuaded by the Magee Party Defendants' attempt to avoid prejudgment interest by claiming the global economic downturn of 2008 caused FKF 3's loans to become "non-performing." The 2008 recession alone cannot be blamed for FKF 3's improper transfers, poor quality loans, mismatch in assets and

liabilities, excessive distributions or lack of solvency. Finally, Magee argues his family's own

losses as creditors of FKF 3 justify denying Plaintiff's motion for prejudgment interest. The jury

found that FKF 3's damages resulted, in part, from Magee's mismanagement of FKF 3, and the

fact that Magee may also have lost money does not preclude an award of prejudgment interest

designed to compensate FKF 3, and by extension, its creditors, for their losses.

## 2. Amount of Prejudgment Interest

Having determined that prejudgment interest on the fraudulent conveyance claims is

appropriate, the Court next turns to the amount of prejudgment interest that should be awarded.

When determining the applicable prejudgment interest rate, courts look to the source of the law

underlying a party's claim. *See In re Palermo*, 739 F.3d at 107. "[C]laims that arise out of

federal law are governed by federal rules, claims arising out of state law are governed by state

rules." *Id.* However, "judgments that are based on both state and federal law with respect to

which no distinction is drawn shall have applicable interest calculated at the federal interest

rate." *Thomas v. iStar Fin., Inc.*, 629 F.3d 276, 280 (2d Cir. 2010). Furthermore, "where

prejudgment interest can only be awarded on the basis of what is solely a state claim, it is

appropriate to use the state interest rate." *Id.* at 280 n. 2. Under federal law, the applicable

interest rate pursuant to 28 U.S.C. § 1961 is the rate of return on the one-year constant maturity

Treasury yield for the relevant time period. Where the interest rate codified in 28 U.S.C. § 1961

is too low to compensate the plaintiff, courts can opt to apply the prime rate of interest. *See In re

1031 Tax Group*, 439 B.R. at 90. Under New York law, "[i]nterest shall be at the rate of nine

per centum per annum, except where otherwise provided by statute." C.P.L.R. § 5004.

Plaintiff argues New York law should apply to the fraudulent conveyances that could

only have been avoided under the NY DCL based on the NY DCL's six-year statute of

limitations. (Docket No. 116 at 14-15). For transfers that could have been avoided under either

the NY DCL or the Bankruptcy Code because they fell within the Bankruptcy Code's shorter two-year statute of limitations, Plaintiff argues federal law should apply. (*Id.* at 16). The Magee Party Defendants maintain that because the verdict sheet and Judgment do not draw a distinction between fraudulent conveyances arising under the NY DCL or the Bankruptcy Code, federal law governs the prejudgment interest rate. (Docket No. 128 at 16).

Here, the verdict sheet and Judgment do not differentiate between individual transfers or draw a distinction between transfers that occurred prior to July 19, 2008, thereby arising only under the NY DCL, or after July 19, 2008, thereby arising under either the NY DCL or the Bankruptcy Code. Instead the verdict sheet and Judgment award damages in an aggregate amount for each entity involved in the fraudulent transfers. (Docket No. 110). Plaintiff could have proposed a verdict sheet that asked the jury to distinguish between fraudulent transfers avoided only under the NY DCL or asked the jury to assign damages based on pre-July 19, 2008 transfers and post-July 19, 2008 transfers, but it did not do so. (Docket No. 40). Accordingly, the Court will not speculate as to which parts of the aggregate judgment the jury intended to base on the NY DCL or the Bankruptcy Code. Because the fraudulent conveyance judgments are based on both the NY DCL and the Bankruptcy Code without distinction, they are therefore governed by federal law. *See Thomas*, 629 F.3d at 280.

Plaintiff argues prejudgment interest should accrue from the relevant transfer date, or in the case where there are multiple transfer dates, from a median or midpoint date. (Docket No. 116 at 17). The Magee Party Defendants contend that the Court should compute prejudgment interest from the later Petition Date. (Docket No. 128 at 18). Plaintiff cites one case where the court awarded prejudgment interest from the date of the fraudulent transfer. *See In re Opus E., LLC*, 528 B.R. 30, 109 (Bankr. D. Del. 2015). Plaintiff nonetheless acknowledges that many

courts in a bankruptcy setting apply prejudgment interest from the date the adversary proceeding commenced. *See In re Colonial Realty Co.*, 226 B.R. 513, 526 (Bankr. D. Conn. 1998) ("Bankruptcy courts have generally awarded prejudgment interest in fraudulent transfer actions from the time demand is made or an adversary proceeding initiated."); *In re Gen. Search.com*, 322 B.R. 836, 851 (Bankr. N.D. Ill. 2005) (awarding prejudgment interest on the date the adversary proceeding commenced).

The Court is persuaded by the reasoning in *Buchwald v. The Renco Grp., et al.*, No. 12-cv-7948 (AJN) (S.D.N.Y. Mar. 16, 2015) (Docket No. 342) (the "*Buchwald* Order"). In the *Buchwald* Order, the court reasoned the bankruptcy petition date was the appropriate accrual date for prejudgment interest because "the fraudulent conveyance claims . . . were only asserted in the bankruptcy context" and "it is because [the Debtor] went into bankruptcy that the transfers became actionable at all." *Id.* at 10 (citing *In re Nelson Co.*, 117 B.R. 813, 818 (Bankr. E.D. Pa. 1990)). Here, even though the *Buchwald* case was decided under New York law, the Court finds the *Buchwald* court's reasoning persuasive in this context. Like the fraudulent conveyance claims in the *Buchwald* case, the fraudulent conveyance claims here arose only in the context of FKF 3's bankruptcy proceeding, and Plaintiff could only assert its claims arising under section 548 of the Bankruptcy Code upon the filing of the bankruptcy petition. *See* 11 U.S.C. § 548(a)(1); *Buchwald* Order at 10. Thus, the Court finds it appropriate to calculate prejudgment interest on the fraudulent conveyance claims from the Petition Date.

Plaintiff next argues the Court should apply the prime interest rate. (Docket No. 116 at 21). In response, the Magee Party Defendants contend the federal rate provided by 28 U.S.C. § 1961(a) should apply. (Docket No. 128 at 14). As a comparison, on July 19, 2010, the federal

rate under 28 U.S.C. § 1961(a) was .28% while the prime rate was 3.25%.[16] "The Court has

discretion in the selection of interest rates and 'may award interest at or above the prime rate.'"

*In re 1031 Tax Grp.*, 439 B.R. at 90 (citation omitted). Based on the equitable considerations in

this case and the compensatory purpose of prejudgment interest, the Court finds that applying the

prime interest rate will more fully and fairly compensate Plaintiff for the opportunity costs of the

wrongfully transferred funds. *See Till v. SCS Credit Corp.*, 541 U.S. 465, 479 (2004) (the prime

rate "reflects the financial market's estimate of the amount a commercial bank should charge a

creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk

of inflation, and the relatively slight risk of default."); *In re 1031 Tax Grp.*, 439 B.R. at 90

(applying the prime interest rate where alternative methods did not fully compensate Plaintiff).

Accordingly, on the fraudulent conveyance claims, the Clerk of Court is respectfully

directed to calculate prejudgment interest on the following judgments as follows:

On the award of $1,892,196.77 for fraudulent conveyance claims against Aventine

Edgewater, LLC, FKF Edgewater, LLC and John F. Magee, jointly and severally, prejudgment

interest shall be awarded at the rate of 3.25% per annum, not compounded, commencing on July

19, 2010.

On the award of $977,411.00 for fraudulent conveyance claims against Aventine Retail,

LLC, FKF Retail, LLC and John F. Magee, jointly and severally, prejudgment interest shall be

awarded at the rate of 3.25% per annum, not compounded, commencing on July 19, 2010.

On the award of $8,759,220.00 for fraudulent conveyance claims against John F. Magee

in connection with fraudulent transfers to or for the benefit of Slazer Enterprises, LLC,

---

[16] *See* Federal Reserve Statistical Release, Selected Interest Rates
https://www.federalreserve.gov/Releases/H15/20100726/ (last visited October 24, 2018).

prejudgment interest shall be awarded at the rate of 3.25% per annum, not compounded, commencing on July 19, 2010.

On the award of $1,592,541.91 for fraudulent conveyance claims against Jerry's Self Storage, LLC (n/k/a Storage Boss, LLC) and John F. Magee, jointly and severally, prejudgment interest shall be awarded at the rate of 3.25% per annum, not compounded, commencing on July 19, 2010.

On the award of $875,720.83 for fraudulent conveyance claims against FKF Holding Company, LP and John F. Magee, jointly and severally, prejudgment interest shall be awarded at the rate of 3.25% per annum, not compounded, commencing on July 19, 2010.

On the award of $840,000.00 for fraudulent conveyance claims against Commercial Construction, Inc. and John F. Magee, jointly and severally, prejudgment interest shall be awarded at the rate of 3.25% per annum, not compounded, commencing on July 19, 2010.

On the award of $300,000.00 against Bradley Industrial Park, Inc. and John F. Magee, jointly and severally, prejudgment interest shall be awarded at the rate of 3.25% per annum, not compounded, commencing on July 19, 2010.

On the award of $217,121.50 for fraudulent conveyance claims against John F. Magee, prejudgment interest shall be awarded at the rate of 3.25% per annum, not compounded, commencing on July 19, 2010.

## B. Prejudgment Interest on the Breach of Fiduciary Duty Claims

Plaintiff argues prejudgment interest is mandatory on the actual damages awarded on the breach of fiduciary duty claims against Magee and Klein. (Docket No. 116 at 22). The Court agrees. Section 5001 of the C.P.L.R., which applies to Plaintiff's breach of fiduciary duty claims, states "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of contract, or because of an act or omission depriving or otherwise interfering with title to, or

possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion." C.P.L.R. § 5001(a). In *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504 (2d Cir. 1991), the Second Circuit addressed whether prejudgment interest was mandatory under New York law on equitable claims for breach of fiduciary duty. *Id.* at 508. The Court cautioned that "the equity clause of [§ 5001] should not become a source of sterile controversy over the classification of causes of action," and held that the New York statutory interest rate was mandatory because the "cause of action and damages requested were essentially legal in nature . . ." *Id.* at 508-09 (citations and quotations omitted). In *Lewis v. S.L. & E, Inc.*, 831 F.2d 37 (2d. Cir. 1987), the Second Circuit similarly stated that "even on a claim with equitable underpinnings, such as one for breach of fiduciary duty, prejudgment interest would be mandatory where the only relief sought was compensatory damages." *Id.* at 39; *see also J. Barrows, Inc. v. Uvino*, 514 Fed. Appx. 23 (2d Cir. 2013) ("pre-judgment interest . . . is mandatory in New York for both breach of contract and breach of fiduciary duty claims" and "attaches to the fiduciary duty breach where . . . the damages awarded were compensatory for property damage."). In this case, on Plaintiff's breach of fiduciary duty claims, the jury awarded Plaintiff $2,000,000.00 in actual damages against Magee and $15,000,000.00 in actual damages against Klein. (Docket No. 110). Plaintiff only seeks prejudgment interest on the damages awarded meant to compensate Plaintiff for its actual losses. Thus, an award of prejudgment interest is mandatory.

New York's statutory interest rate is 9% per annum. C.P.L.R. § 5004. Section 5001 of the CPLR states interest "shall be computed from the earliest ascertainable date the cause of action existed . . ." CPLR § 5001(b). Although Magee and Klein's breaches occurred prior to the Petition Date, Plaintiff proposes the more conservative Petition Date as the date from which the

prejudgment interest award should be calculated. (Docket No. 116 at 22).  Moreover, the Magee

Party Defendants do not object to using the Petition Date as the date of computation. (Docket

No. 128 at 18).

Accordingly, on the $2,000,000.00 awarded in actual damages against Magee and the

$15,000,000.00 awarded in actual damages against Klein for their breaches of fiduciary duty, the

Court applies the New York statutory rate of 9% per annum, without compounding, computed

from July 19, 2010.

## C.  Prejudgment Interest on the Turnover/Conversion Claim

Plaintiff seeks prejudgment interest on the $956,750.00 awarded on the

turnover/conversion claim against Magee.[17] (Docket No. 116 at 23). For the reasons discussed

above (Section III.A.1, *supra*), Plaintiff is entitled to a discretionary award of prejudgment

interest on its turnover/conversion claim because Plaintiff was deprived of the use of the

wrongfully converted funds as a result of Magee's conduct. *See Wickham*, 955 F.2d at 833-36.

Plaintiff argues federal law governs the appropriate prejudgment interest rate on the

turnover/conversion claim because it is a mixed federal and state law claim without

differentiation in the verdict sheet. (Docket No. 116 at 23).  Plaintiff claims the prime interest

rate is the appropriate rate under federal law, and interest should be computed from September

12, 2011, the date Plaintiff commenced the adversary proceeding ("Adversary Proceeding

Commencement Date"). (*Id.*).  The Magee Party Defendants do not object to using the Adversary

Proceeding Commencement Date as the date of accrual, but they argue the federal rate supplied

by 28 U.S.C. § 1961(a) should apply. (Docket No. 128 at 14).  On September 12, 2011, the prime

---

[17] The Court reduced the $1,039,000.00 initially awarded by the jury on the turnover/conversion claim by
$82,250.00 to avoid duplicative recovery between the turnover/conversion claim and the preferential transfer claim.

interest rate was 3.25%.[18]  To compare, the federal interest rate supplied by 28 U.S.C. § 1961 for

the same date was .11%.[19]  For the reasons discussed above (Section III.A.2, *supra*), the Court

will apply the prime interest rate to the turnover/conversion claim award.

Thus, the Court awards prejudgment interest on the $956,750.00 awarded on the

turnover/conversion claim at the prime interest rate of 3.25%, without compounding,

commencing on September 12, 2011.

## IV.  THE MAGEE PARTY DEFENDANTS' MOTION TO STAY

The Magee Party Defendants move, pursuant to Federal Rule of Civil Procedure 62(b)(1),

(3), for a stay of the enforcement of the judgment pending a disposition on their post-trial

motions.  In the alternative, the Magee Party Defendants move, pursuant to Federal Rule of Civil

Procedure 62(d), to stay enforcement of the judgment pending appeal without requiring a bond.

Federal Rule of Civil Procedure 62(b)(1), (3) authorizes the Court to stay execution of a

judgment pending disposition on a motion under Rule 50 or Rule 59.  By this decision, the Court

denies the Magee Party Defendants' post-trial motions pursuant to Rule 50 and Rule 59. *See*

Section II, *supra*.  Thus, the Magee Party Defendants' motion for a stay pursuant to Rule

62(b)(1), (3) is denied.

Federal Rule of Civil Procedure 62(d) provides "[i]f an appeal is taken, the appellant may

obtain a stay by supersedeas bond . . . The bond may be given upon or after filing the notice of

appeal or after obtaining the order allowing the appeal.  The stay takes effect when the court

approves the bond." Fed. R. Civ. P. 62(d).  "The purpose of the rule is to ensure 'that the

---

[18] *See* Federal Reserve Statistical Release, Selected Interest Rates,
https://www.federalreserve.gov/Releases/H15/20110919/ (last visited October 24, 2018).

[19] *Id.*

prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed.'" *In re Nassau Cnty. Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015) (citation omitted). The district court has discretion to waive the bond requirement "if the appellant provides an acceptable alternative means of securing the judgment." *Id.* (citing *FDIC v. Ann-High Assocs.*, No. 97-6095, 1997 WL 1877195, at *1 (2d Cir. 1997)). In this case, no appeal has been taken yet. Accordingly, the Magee Party Defendants' request for a stay is not yet ripe for the Court's review, and their motion pursuant to Rule 62(d) is denied without prejudice.

## V. CONCLUSION

For the foregoing reasons, (1) the Magee Party Defendants' motions pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure are denied; (2) Plaintiff's motion to alter the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure is granted in part and denied in part; and (3) the Magee Party Defendants' motion to stay pursuant to Federal Rule of Civil Procedure 62 is denied without prejudice. In addition, the Magee Party Defendants' request for oral argument is denied. (Docket Nos. 120, 126, 130). The Clerk is respectfully requested to terminate the pending motions (Docket Nos. 115, 119, 120, 124, 126, 130).


Dated:   October 24, 2018
         White Plains, New York

                                   **SO ORDERED:**


                                   _____
                                   JUDITH C. McCARTHY
                                   United States Magistrate Judge